# JOHN L. McLAUGHLIN, Appellant, v. MARY M. McLAUGHLIN.

### Division One, May 31, 1910.

1. **CONVICT: Suit Involving Property.** A convict confined in the penitentiary for a term less than life is civilly dead, and when his estate is being attacked by a suit he can, under the statute, be in court only through a trustee, and no valid judgment affecting his property can be rendered until such trustee has been appointed and brought into court.

2. ——: ——: **Divorce and Alimony.** In a divorce suit by the wife against her husband who is a convict confined in the penitentiary for a term of years, no valid decree can be entered investing her with his real estate unless he is in court through a trustee; and if such decree is entered, without the appointment of a trustee, he can, after his release and pardon by the Governor, maintain a suit for the recovery of his property, and to have set aside so much of the decree as vests the title in the wife.

3. ——: ——: ——: **Summons: Exception.** The service of a summons in a suit for a divorce upon the convict should be considered an exception grafted upon the statutory law making invalid a service of summons on an incarcerated convict in a suit involving his property. That exception cannot be permitted to extend to a case wherein it is sought under a petition for a divorce to confiscate the convict's estate. The proceeding for a divorce, pure and simple, without alimony or sequestration of property, is one affecting the status of the parties, and not the estate of the convict, and to this extent the exception, permitting suit against the convict without a trustee, could in reason go, for the statute (Art. 2, chap. 141, R. S. 1899) does not contemplate that the trustee look after the marriage relation of the parties; but it does contemplate that when the convict's estate is attacked, a trustee shall be present in court and made a party to the proceeding.

4. ——: ——: **Statutes Complete Scheme: Common Law.** Article 2 of Chapter 141, Revised Statutes 1899, provides a complete scheme within itself for the holding, management, protection and disbursement of the estate of the convict incarcerated for less than life, and all that is to be done through a trustee, and it can be legally done in no other way. Those statutes are a step in advance of the common law, and the broad generalities of the common law are of no binding force as against them.

5. **JUDGMENT VOID ON FACE: Equity: Action to Quiet Title.** In an action under Sec. 650, R. S. 1899, to ascertain and determine the title, if a judgment conveying the title was void on its face, the court should say so, and not sustain a demurrer to the petition on the ground that a bill in equity to cancel it is unnecessary.

6. ——: ——: **To Remove Cloud: Convict.** The fact that a judgment, in a suit brought by a wife for divorce from her incarcerated husband alone and decreeing to her his lands by way of alimony, is void, does not appear upon the face of the record, and therefore a bill in equity to remove it as a cloud

upon the title of the liberated convict is maintainable, and should not be dismissed on the theory that no suit in equity was necessary.

7. ———: ———: **Homestead.** Whether or not the homestead of the head of a family can be decreed in kind to a successful plaintiff in a divorce suit is an extremely delicate question and one about which able legal minds might differ. Therefore, a suit in equity to set aside a judgment so decreeing should not be dismissed on the ground that, the judgment being void, no suit in equity is necessary. The delicacy of such question is adverted to in this case, but it is not decided, because the judgment decreeing away the incarcerated convict's homestead land is held invalid and voidable on another ground, namely, because he was not represented by a trustee in the case which resulted in that judgment, and therefore the question of whether in any suit the homestead could be decreed to the wife as alimony is not decided.

Appeal from Caldwell Circuit Court.—*Hon. Francis H. Trimble,* Judge.

REVERSED AND REMANDED.

*J. M. Davis & Son* for appellant.

(1) Alimony is an allowance payable out of the husband's estate for the wife's support, payable periodically, except where the statutes authorize an award in gross. It is not a portion of the husband's estate to be assigned to her in fee simple. It never covers the estate itself, and cannot be decreed in specific property, except by statutory authorization or by agreement. 1 Bailey on Jur., sec. 271, p. 282; 2 Am. and Eng. Ency. Law (2 Ed.), p. 129; 2 Bishop on Mar. Div. and Sep., secs. 835 and 1117; Calme v. Calme, 25 N. J. Eq. 548; Almond v. Almond, 4 Randolph (Va.) 662, 15 Am. Dec. 781; Campbell v. Campbell, 37 Wis. 216; Bacon v. Bacon, 43 Wis. 203; Perkins v. Perkins, 16 Mich. 167; McGuire v. McGuire, 7 Dana 187; Alexander v. Alexander, 140 Ind. 560. Under the common law alimony can be awarded only in periodical allowances, not in gross, and this has been

modified to the extent only of permitting it to be awarded in gross, but the court can only render a money judgment. R. S. 1899, sec. 2927. Upon "default" by the husband of the payment of the money judgment, the court may enforce payment of its money judgments by execution, sequestration of the rents and profits, etc., but this power only comes into existence after an order for payment has been made and "upon default . . . to pay . . . such alimony." (2) The sentence of plaintiff to the penitentiary suspended all of his civil rights, and the court was without authority to enter a judgment affecting his property rights, until the appointment of a trustee, as required by section 8930, R. S. 1899. R. S. 1899, sec. 2382; Rice v. Lawrence, 29 Kan. 113; New v. Smith, 84 Pac. (Kan.) 1030; Williams v. Shackleford, 97 Mo. 322. (3) This court in a divorce action, under the pretence of awarding alimony, granted real estate, which under no circumstances it had authority to grant; its judgment was to that extent void. Scott v. Royston, 223 Mo. 568; Fithian v. Monks, 43 Mo. 522; 1 Freeman on Judg. (4 Ed.), secs. 116, 118, 120 c; Cooper v. Reynolds, 10 Wall. 316; Richey v. Sayers, 100 Fed. 520; United States v. Walker, 109 U. S. 258; Windsor v. McVey, 93 U. S. 274; Hall v. Vernor, 49 L. R. A. (W. Va.) 464; Risley v. Bank, 83 N. Y. 337; 24 Am. and Eng. Ency. Law (2 Ed.), 717-19: (4) The judgment undertaking to divest plaintiff of the title to his land being void for want of power of the court to render such judgment, plaintiff is entitled to attack it by a bill in equity. Johnson v. Coleman, 23 Wis. 452; Lumber Co. v. Ward, 85 Pac. (Okla.) 459; Caruthers v. Hortsfield, 3 Yerg. 366; White v. Espy, 21 Ore. 328; Murray v. Surety Co., 70 Fed. 346. (5) The first count of plaintiff's petition, having for its purpose the annulling of the judgment, has every element of a direct attack. Van Fleet, Col. Attack, secs. 2 and 3; Wanderley v. Lafayette Co., 150 Mo. 653; Whetstone

v. Whetstone, 31 Ia. 276; 2 Colo. Law Times, 59; Truesdail v. McCormick, 126 Mo. 44. (6) Although the judgment was void it constituted color of title, and plaintiff is entitled to the relief he seeks. Jones v. Thomas, 124 Mo. 586. (7) The judgment being such a cloud on plaintiff's title as to require legal acumen to discover its invalidity, a court of equity will entertain jurisdiction to remove the cloud. Bank v. Evans, 51 Mo. 657; Verdin v. St. Louis, 131 Mo. 78; Jewett v. Boardman, 181 Mo. 657; Perkins v. Baer, 95 Mo. App. 78. (8) But if we treat this as a collateral attack on the former judgment, then the count to ascertain title is maintainable, and that part of the former judgment attacked should be declared void for lack of jurisdiction in the court to render the judgment it did render, which infirmity appears on the face of the record. Adams v. Cowles, 95 Mo. 507; State ex rel. v. Tullock, 108 Mo. App. 35. (9) Under the last count of his petition based on sec. 650, R. S. 1899, to ascertain and determine title, plaintiff was entitled to have the judgment of the court as to the title and interest of plaintiff and defendant in the premises in controversy; that count of the petition complied with every requirement of the statute and therefore was not subject to demurrer. Huff v. Land Co., 157 Mo. 65; Spore v. Land Co., 186 Mo. 656; Bulls v. Woolfolk, 175 Mo. 278; Elliott v. Shepherd, 179 Mo. 382. Under this section this action is maintainable without regard to the nature of the claim of the respective parties. Utter v. Sidman, 170 Mo. 289; Meriwether v. Love, 167 Mo. 514; Garrison v. Frazier, 165 Mo. 46. This statute is designed to determine all questions, whether of law or equity, relating to the respective title of the parties. Wheeler v. Land Co., 189 Mo. 289; Scott v. Royston, 223 Mo. 568.

*Crosby Johnson* and *C. C. Johnson* for respondent.

(1) If what the plaintiff says is true, then the decree in question was void on its face, and therefore not a cloud upon his title to the land in question. Bolland v. Johnson, 80 Mo. 34; Humphreys v. Milling Co., 98 Mo. 42; Truesdail v. McCormick, 126 Mo. 39. (2) This proceeding, although called by plaintiff's attorney a direct attack on the judgment in question, is unquestionably a collateral attack upon such judgment. It could not be directly attacked except by appeal or writ of error. Truesdail v. McCormick, 126 Mo. 39; Ketchum v. Chrisman, 128 Mo. 38; Sims v. Gray, 66 Mo. 613. (3) Service of writ and summons on defendant in the penitentiary by the sheriff of Cole county, gave the court jurisdiction over the defendant in person. Gray v. Gray, 104 Mo. App. 520; Bland v. Bland, 12 Moah. Eng. Rep. 688. (4) As the property is described in the petition, which was personally served on the defendant in the divorce suit, the decree in that case is impervious to attack for any mere irregularity. Orvis v. Elliott, 65 Mo. App. 96; Jameson v. Kinsep, 85 Mo. App. 298; Covington v. Chamblin, 156 Mo. 574. (5) Our circuit courts are clothed with power to divest and vest title in the parties to the suit, in a proper case. Macklen v. Allenberg, 100 Mo. 337; R. S. 1899, secs. 785, 787. (6) The defendant could not be imprisoned on a judgment for alimony. Kinsolving's Case, 135 Mo. App. 631. (7) The grant of a power is considered to include the use of incidental powers to make the principal grant effective. Hardware Co. v. Building Co., 132 Mo. 452. (8) The circuit court had power to award land as alimony. R. S. 1899, sec. 2126; Berthelemy v. Johnson, 3 B. Mon. (Ky.) 90, 38 Am. Dec. 179; Mussing v. Mussing, 104 Ill. 126; Wheeler v. Wheeler, 18 Ill. 30; Crews v. Mooney, 74 Mo. 29; Williams v. Shackleford, 97 Mo. 322. (9) A homestead is

exempt from execution on a judgment for alimony. Biffle v. Pulliam, 114 Mo. 50.

GRAVES, J.—Plaintiff and defendant were formerly husband and wife. This cause comes here upon a judgment sustaining a demurrer to plaintiff's petition. His petition was in three counts originally, but it is stated that the second count thereof, which appears from the trial judge's written opinion filed in the cause to have been a count in ejectment, was dismissed.

In the first count, plaintiff seeks by a direct count in equity to set aside that part of a judgment in a divorce suit between him and his wife by which the title to eighty acres of land in Caldwell county was decreed out of him and vested in his former wife, the defendant herein. In said count it is averred that plaintiff, from 1885 to 1897 was the owner of said land, was the head of a family and lived thereon; that his deed was recorded in Caldwell county; that he has never conveyed the same; that in 1897 he was convicted of murder and sentenced to the penitentiary of Missouri for ten years; that he remained in the penitentiary from 1898 to March 7, 1904, at which time he was released, and on May 19th was granted a full pardon by the Governor of the State. It is then averred that in 1902, whilst plaintiff was thus confined in the penitentiary and civilly dead, the defendant brought suit against him for divorce and alimony, as well as the care and custody of the children, and asked that such alimony or support and maintenance be decreed to her out of the property of this plaintiff; that service of the summons in said divorce suit was had upon plaintiff while he was incarcerated in the penitentiary under the judgment and sentence for murder aforesaid; that he could not defend the same; that in such divorce suit the defendant in this case was

granted a divorce from this plaintiff, together with the custody of the children of their marriage, and in said judgment and decree it was further decreed that the defendant in this cause be vested with the title to the land aforesaid, and that the title to the land aforesaid was divested from this plaintiff; that said action was beyond the powers and jurisdiction of the circuit court, and such decree, in so far as it affects the land, was beyond the powers and jurisdiction of the court, but was such as to create a cloud upon plaintiff's title to said land, as well as his homestead rights therein. The said first count concludes with the following prayer:

"Wherefore, plaintiff prays that said judgment and decree of this court divesting out of this plaintiff the title to said real estate described as aforesaid, and vesting the same in the defendant Mary M. McLaughlin, be declared to be a cloud upon plaintiff's title to said real estate. That the same be set aside and for naught held and that the court remove said judgment and decree as a cloud upon the title of plaintiff in and to said land, and for all such other and further relief as pertaineth to equity and good conscience, and as the plaintiff may on the trial of said cause show himself entitled to."

The third count is one under section 650, to have ascertained and determined the respective interests of the parties to the land in question. In this count it is averred that defendant claims some interest in the land under the judgment described in the first count. This second count pleads all the facts pleaded in the first count, and alleges in addition that the equity in said land did not exceed $1500, the sum allowed as a homestead. By the prayer the court was asked to ascertain and determine the interests of the parties in and to the land.

To the petition the defendant demurred in this language:

"Defendant for plea to the first count of plaintiff's petition in above cause demurs to the same for the following reasons:

"1. Because the facts therein stated constitute no cause of action against this defendant.

"2. Because the reasons assigned therein as causes for holding the decree of divorce and alimony as void or invalid are not good in law.

"3. Because the facts stated therein do not entitle the plaintiff to the relief sought or any relief.

"To the third count of the petition the defendant demurs on the same grounds and for like reasons as those assigned as grounds of demurrer to the first count."

Plaintiff refused to plead further and upon judgment being entered against him has appealed to this court.

I. Plaintiff does not challenge that portion of the decree in the original cause which grants the divorce, but only that portion which deprived him of his property. He charges in his petition that he was civilly dead, and that no trustee was appointed for his estate as might have been done under article 2, chapter 141, Revised Statutes 1899. The position of plaintiff is that a trustee must be appointed under said article 2, before the court has jurisdiction of a case involving his estate, as contradistinguished from the marriage status.

Plaintiff was sentenced for a term of ten years. Our statute, Revised Statutes 1899, section 2382, reads: "A sentence of imprisonment in the penitentiary for a term less than life suspends all civil rights of the persons so sentenced, during the term thereof, and forfeits all public offices and trusts, authority and power; and the person sentenced to such imprisonment for life shall thereafter be deemed civilly dead."

Section 8930 is the statute pertaining to the appointment of a trustee, and reads: "Whenever any

persons shall be imprisoned in the penitentiary for a term less than his natural life, a trustee, to take charge of and manage his estate, may be appointed by the circuit court of the county in which such convict last resided; or if he have no known place of residence, then by the court of the county in which the conviction was had, on the application of any of his relatives, or any relative of his wife, or any creditor.''

By other sections of article 2, chapter 141, supra, it is provided, (1) such trustee shall take an oath and give bond, (2) and shall be under the control of the court appointing him, (3) upon taking of the oath and filing of the bond all of the estate of the convict shall vest in the trustee, (4) such trustee may prosecute and defend actions by or against such convict, (5) the court may order sale of property for support and maintenance of family and education of children, (6) trustee shall settle with creditors, and to that end may examine witnesses, and (7) such trustee may redeem mortgages, conditional contracts and pledges of the convict. Other provisions are found in this article, but the ones enumerated suffice to illustrate the scope thereof. Finally the trustee is required upon the release of the convict to turn over the estate to him, or in the event of his death to account to the personal representative.

The question, therefore, is, should the plaintiff in the divorce proceeding have had a trustee appointed before instituting a suit which involved the taking of the convict's estate, and without there being such trustee did the circuit court have the right to proceed with the cause in so far as it pertained to the estate of the convict? The question is not one void of difficulties. Nor are the cases from other States always enlightening, because of the difference in the statutory provisions.

It would appear that under the common law, the convict could not sue, but he could be sued. The exact

status of the convict at common law is not one to be determined without some perplexities. ANDREWS, J., in Avery v. Everett, 110 N. Y. l. c. 333, in discussing the status of a convict under the statutes of New York, but having occasion to exploit the field of the common law, has well said: "Anyone who takes the pains to explore the ancient, and in many respects obsolete, learning connected with the doctrine of civil death in consequence of crime, will find that he has to grope his way along paths marked by obscure, flickering and sometimes misleading lights, and he cannot feel sure that at some point in his course he has not missed the true road. But there is a guiding principle which, in the present case, greatly aids in solving the question presented, and that is, that no one can or ought to be divested of his property *in invitum,* except by the clear warrant of law, and this, we think, is not found in the statute relating to civil death."

The law-writers usually announce the broad rule that at common law the convict could be sued, but being deprived of his civil rights could not sue. [6 Am. and Eng. Ency. Law (2 Ed.), p. 65; 9 Cyc. 871.]

In the latter authority, at page 874, it is said: "By the great weight of authority, offenders, whether sentenced to State prison for life or for a term of years during which their civil rights are suspended, are still liable to be sued, and this liability necessarily carries with it the right to defend; although there are cases holding that a pending action is abated by the conviction and sentence of the defendant to imprisonment in the State prison. But again it has been held that a plea or answer in abatement setting up the civil death of the defendant is inconsistent and bad on demurrer, because the fact that he is able to plead or answer shows him to be alive. Where the statute provides for the appointment of a trustee of the estate of one imprisoned for crime, it is clear that such trustee should defend any action against the convict

that may be pending at the time of his conviction and sentence, and proceedings ought to be stayed until after his appointment and qualification.''

In some cases it has been suggested that statutes declaring the civil death of convicted felons are but declaratory of the common law. In a way this is no doubt true, but it should not be overlooked that often statutes, whilst being in a sense declaratory of the common law, give indication of a legislative purpose to thwart the rigors of the common law. So to our mind the solution of the point in issue must be found in our statutes. The first section quoted (Sec. 2382) modifies and changes the common law. Under it a person sentenced for a felony for a term less than life only has his civil rights suspended during the term of the sentence. The common law rule went much further. In fact, under our Constitution, no statute could fully declare the common law status of a convicted felon. Not only is this true, but by article 2, chapter 141, supra, full provision is made for the protection of the estate of the convict. At common law he could not sue to protect his estate, but under article 2 the law provides for a trustee to sue for him. Here we have an evidence of a legislative intent to modify the rigid rules of the common law. Section 2382, and the various sections of article 2, supra, must be construed together. Whilst by the first section the convict's civil rights are suspended, yet they are not so suspended as to prevent the proper administration of his affairs under the sundry provisions of the latter article. And may it not be suggested that whilst at common law he could be sued, yet there was no adequate means given him for a proper defense, and the sections of article 2, supra, were no doubt passed to the end that this situation would be relieved? This court has held that a deed of trust executed by a convict is void. [Williams v. Shackleford, 97 Mo. 322.] If sued, therefore, the convict would be powerless to make a contract

binding himself and his estate to procure legal talent to defend the suit, or to procure the necessary incidental expenses of a defense to the suit. The only way a defense could be properly made would be through the trustee provided for by the terms of article 2 of chapter 141. Under these statutes, the trustee under the direction of the court appointing him could see that the suit was properly defended.

When all of our statutory provisions are taken and considered as a whole, as must be done, we are of opinion that they contemplate that when the estate of a convict is being attacked by a suit, such convict should be in court through his trustee before a valid judgment could be entered touching his property. In Bowles v. Habermann, 95 N. Y. 246, the New York court deals in a limited measure with the question before us. In that case Bowles had procured, before his conviction of murder, a judgment against the defendant in an action for tort. An appeal was taken by the defendant to the New York Court of Appeals. Pending this appeal the defendant was convicted, sentenced to the penitentiary for ten years, and was incarcerated therein. Defendant filed his motion to suspend action on the case during the term of plaintiff's sentence. This motion the court overruled. And later the case was heard and the judgment affirmed. [98 N. Y. 267.] In the opinion upon the motion, 95 N. Y. l. c. 250, EARL, J., said: "But provisions are made by law by which this judgment may be enforced, and the appeal defended on behalf of the plaintiff. It is provided in the Revised Statutes (2 R. S. 15), that whenever any debtor shall be imprisoned in a State prison for any term less than his natural life, or in any penitentiary or county jail for any term more than one year, application may be made to the officers specified by any creditor of such person, or by any relative, or by any relative of his wife, for the appointment of trustees to take charge of his estate;

that the trustees so appointed shall have the same rights in, and power over, his real and personal estate as trustees of the estate of an absconding debtor appointed under the Revised Statutes have; and it is further provided that such trustees shall pay the debts of the imprisoned debtor, and after paying his debts and their disbursements and commissions, that they may, under the direction of the officer who appointed them, or of any equity judge, from time to time, apply the surplus of any moneys in their hands to the support of the wife and children of such debtor and of such other relatives as he may be bound to support, and to the education of his children. So in this case trustees may be appointed under these provisions who may defend this appeal and enforce this judgment, and collect the money thereon, and after paying the debts of the plaintiff, if there is any surplus and no relatives to be supported, the trustees will hold that for him until the term of his imprisonment shall have expired, when they will be bound to account to him.'' The provisions of the New York statute are much like our own for the appointment of a trustee. In effect the New York court holds that whilst at common law the plaintiff could not prosecute a suit, yet after the prosecution was begun, under the statute his trustee could proceed.

In Kansas the statutes are much like those of this State. In fact most of the sections are practically literal copies of our article 2, chapter 141. The force and effect of such statutes came under review in the case of Commissioners of Rice County v. Lawrence, 29 Kan. 158. In that case the court passed judgment upon sections 338 and 348 of chapter 82, Compiled Laws of 1879. Section 338 is identical with our section 8930, quoted supra, and for that reason we shall not repeat the language here. Section 343 of the Kansas law is identical with our section 8935 and reads thus: ''Such trustee may sue for and recover, in his own

name, any of the estate, property or effects belonging to, and all debts and sums of money due or to become due to, such imprisoned convict, and may prosecute and defend all actions commenced by or against such convict.'' We quote this section in full as we had only given the substance thereof above after having quoted our section 8930.

In the Lawrence case, the facts were: Lawrence was a defaulting treasurer of Rice county, Kansas. November 25, 1876, suit was brought against him and his bondsmen to recover $20,000. In this suit issue was joined, and in June, 1877, by agreement the venue thereof was changed to Reno county. February 5, 1878, Lawrence and his attorneys being present, the case was referred to a referee by an order of the court. The referee qualified, heard the case and reported to the court. The report was confirmed and judgment entered April 15, 1878, for something over $14,000. Execution was issued June 5, 1878, and on August 3d following, the personal and real property of Lawrence was sold, and this sale confirmed by the court April 8, 1879. Such is the history of the civil case. It will be noticed that defendant was not only duly served, but appeared and answered. Now to the accompanying criminal case. June 20, 1877, whilst the civil action was pending, but before the referee order was made, Lawrence was indicted for embezzlement. August 21, 1877, the venue of the cause was changed to Reno county. On February 5, 1878, the same day that the reference was ordered, Lawrence was sentenced to the penitentiary for three years for embezzlement. He remained in the penitentiary until June, 1880, when he was released upon a pardon from the Governor. February 4, 1882, he filed motion to set aside the judgment in the civil cause entered as above stated, on the ground that he was under sentence when the judgment was entered, *and no trustee was appointed to manage his estate or defend said civil action.*

This motion was sustained by the lower court and its judgment affirmed by the Supreme Court. In the course of the opinion, HORTON, C. J., after quoting sections 338 and 343, chapter 82, of their laws, which are practically identical with sections 8930 and 8935 of our laws, among other things said: "Under these and the other sections of the article relating to the custody and management of the estates of convicts, we think that the service of a summons on a defendant, while imprisoned in the penitentiary for a term of years— excepting in a single instance hereafter noticed—must be treated as void, and that the conviction, sentence and imprisonment of the defendant in the State penitentiary, pending the action against him prior to the hearing or trial thereof, must abate the action; at least, a judgment rendered in such a case may be treated as a nullity and set aside by the court rendering it, upon proper proceedings had. [Comp. Laws 1879, art. 17, 770-773.] Of course, if a trustee is appointed under the statute, he may contest any action already commenced against the convict, and the judgment thus rendered would be valid in all respects. The provisions of said article 17 prescribe the remedy to be pursued by the court, when the civil rights of the debtor are suspended by imprisonment in the penitentiary under sentence for life, or for a term of years less than life, and these provisions in the nature of things are and ought to be exclusive, not merely cumulative. Inextricable confusion would follow, if one creditor proceeded personally against the convict after he is imprisoned, and another against a trustee, appointed upon his application. Not only would the proceedings to collect the judgments be liable to conflict, but, moreover, the object of the statute would be nullified. After a debtor is imprisoned under the law, he is in no condition to appear to defend a civil action pending against him; he is in no condition to consult or advise with witnesses or counsel concerning the de-

fense of the action; nor is he in any condition to employ counsel, or continue the services of counsel previously engaged. That conviction, sentence and imprisonment of the defendant suspended his civil rights, and also suspended his creditors' rights to bring action against him. After his imprisonment, a trustee might have been appointed, upon the application of plaintiff or any other creditor, to take charge of and manage his estate; but no valid judgment could be rendered after his imprisonment, without the appointment of a trustee."

The court then proceeds to discuss the New York cases, but finally reaches a further question urged in the case at bar. It is urged in the case at bar that the statute makes a conviction for felony a ground for divorce, and therefore the defendant was properly served in this case. The Supreme Court of Kansas in the Lawrence case thus disposes of the same question: "Again our attention is called to section 639 of the Civil Code, empowering a district court to grant a divorce where either of the parties has been convicted of a felony and imprisonment in the penitentiary therefor subsequent to the marriage. Upon this, counsel contend that the statute recognizes that process for the commencement of an action against a convict may be served after imprisonment. Granted; but this is an exception specially provided for by the statute, and therefore does not militate against the construction given by us to the statute regarding the estates of convicts. In an action for divorce, for such a cause, the conviction and imprisonment are the material facts to be proved, and there are manifest and manifold reasons, which will naturally occur to anyone upon consideration, why the service in a divorce proceeding founded upon the conviction and imprisonment of the defendant ought to be excepted from the general rule forbidding the service of process upon a defendant in prison."

The doctrine of the Lawrence case, supra, is reiterated by the Kansas court in the case of New v. Smith, 84 Pac. 1030. We find that the Kansas court is the only one which has undertaken to express views upon statutes like our own, and the construction given such statutes appears to be reasonable.

To our mind the enactment of article 2, chapter 141, had no other purpose than that of protecting the estate of a convict. It is a step in advance of the common law. Under the common law he could be made a party defendant, but he was shorn of the power to make a real defense. Civilly dead, he could not contract as to his defense. Incarcerated, he could not defend in person. Every means of a real defense was taken from him, and the Legislature had some purpose when it passed these laws as to the preservation of his estate. To our mind that purpose was to compel the appointment of a trustee whenever it was desired to attack his estate, either for the payment of debts or for the support and maintenance of his wife and children.

By section 8950, it is provided: "The court shall have power, from time to time, to make, and cause the trustee to execute, orders for the application of any portion of the proceeds of estates in their hands for the support and maintenance of the family of such convict, and the education of his children, and to set apart and reserve to the use of such family any property, real or personal, when it may be done without prejudice to the rights of creditors."

As to creditors, section 8937 provides: "The trustee shall settle matters and accounts between such imprisoned convict and his creditors, and may examine witnesses touching such matters and accounts, upon oath, to be administered by him; he may, under the direction of the court, compound with any person indebted to such imprisoned convict, and thereupon discharge all demands against such convict."

Other sections provide the details of hearing and determining the claims of creditors. In fact, this article provides a complete scheme within itself for the holding, management, protection and disbursement of the estate of a convict. Its very purpose is the preservation and protection of the estate and the thwarting of the designs of creditors and others in their attack upon the estate of one helpless by his incarceration. The broad generalities of the common law have no place in a State with such statutes as we have. As said by Chief Justice HORTON, the service of a summons for a divorce should be considered as an exception grafted upon our statutory law. This exception should not be permitted to extend to a case where under a petition for divorce it is sought to confiscate the estate of the convict. The proceeding for a divorce pure and simple, without alimony or sequestration of property, is one affecting the status of the parties and not the estate, and to this extent the exception could in reason go, and no trustee need be appointed. The statute does not contemplate that the trustee look after the marriage status of the parties, but the statute does contemplate that when the convict's estate is attacked, a trustee should be present in court and as a party to the proceeding.

We are cited to the case of Gray v. Gray, 104 Mo. App. 520, wherein the St. Louis Court of Appeals held that a convict in the penitentiary could be sued for divorce. The lower court held that the party was civilly dead and could not be sued and the plaintiff's bill was dismissed. This judgment the Court of Appeals reversed, but added: "Courts should carefully protect the rights and interests of a disabled defendant in a proceeding like this, and it would not be improper to appoint some attorney to look after the case as the friend of the court if no defense is made; especially if property interests are involved."

What was said as to property interests was gratuitous in that case, and without any consideration of article 2, of chapter 141, of our statutes. The cases relied upon by that court were the old cases announcing the old common law rule, which cases, in our judgment, have no application in a case where it is sought to obtain a money judgment, or sequestrate property in a jurisdiction having such statutes as we have in this State.

We, therefore, hold that on the face of the admitted facts, for the demurrer admits the facts pleaded, the judgment in the divorce suit was invalid and void in so far as it divested the present plaintiff of title to the land in dispute.

II.   Another extremely delicate question is presented by this record, and that is whether or not the homestead of the head of a family can be decreed in kind to the successful plaintiff in a divorce suit. What we have concluded above obviates a discussion of this question and we leave it to a case wherein necessity requires a ruling.

In other words, having found that the judgment attacked in this case is invalid and voidable, it is not necessary to discuss it further for the full determination of the case at bar.

III.   But it is urged that if the judgment is void upon its face then there is no necessity for a bill in equity to cancel it and therefore the demurrer was properly sustained. How stands this proposition, remembering that the first count is one in equity to remove cloud upon title, and the other an action under section 650 to define title? As to the latter count, this insistence could not be sustained. In an action under section 650, if the judgment conveying title was void upon its face, then the court should so say, and declare that defendant acquired no title thereby, and

further that the title was vested in plaintiff under the facts pleaded, if such facts are proven.

Nor are we prepared to say that the insistence of defendant is good as to the first count. On the theory that the judgment should be held void because defendant was a convict at the time it was entered, it must be borne in mind that such fact making it void does not appear upon the face of the record, but must be shown *dehors* the record. When such is the case, the judgment itself does cast a cloud, and equity will remove the same upon proper proof.

But going to the other question, *i. e.*, as to whether or not the judgment is void upon its face because of decreeing the title to a homestead in lieu of alimony, it can be said that the question is one of such grave doubt, that even on that ground such a cloud would be cast upon the title as to justify equitable relief. This latter question as to the validity of the judgment is by no means clear and the best legal minds might differ thereon.

The demurrer was improperly sustained and the judgment in this case is reversed and the cause remanded to be proceeded with in accordance with the views herein expressed. All concur.