JOSEPH MURPHY et al., Appellants, v. WILLIAM N. BARRON.

Division One, July 5, 1918.

1. **QUIETING TITLE: Pleading: Equitable and Legal Title: Relief.** In a suit brought under Sec. 2535, R. S. 1909, the petition may contain two counts, one asking for a determination of the title, and the other sounding in ejectment, and if defendant's title be found vulnerable in equity or void in law, plaintiff may have both possession and the removal of defendant's cloud.

2. **CONVICT: Sale of Land for Taxes: Void Judgment.** A judgment for taxes obtained against an owner of land incarcerated in the Penitentiary is void and a sale under execution does not affect the legal title. The statute specifically declares that a convict "shall be deemed civilly dead" during the term of his sentence, but it also says he "is and shall be under the protection of the law" and provides for the appointment of a trustee to "prosecute and defend all actions commenced by or against the convict;" and if the State, instead of pursuing the course thus provided by the statute, proceeds against him directly for the taxes due from his land at a time when he cannot be haled into court, the judgment does not affect the legal title.

3. **TITLE TO LAND: Judgment as Estoppel.** In order that a judgment may have the effect of transferring title to land by estoppel, it must be pronounced by a court acting within the limits of a jurisdiction which authorizes it. If the court in pronouncing the judgment acted by virtue of a special or limited statutory jurisdiction, it can be upheld only when the plain letter of the law permits it.

4. **———: ———: Condemnation: Adverse Claimants to Award: Determination of Title.** Commissioners appointed by the court to assess damages in a condemnation proceeding begun by a railroad company estimated the value of a right-of-way one hundred

feet wide through forty acres of land, at one hundred dollars. Plaintiff at the time was in possession claiming title, and defendant held a recorded deed made by the sheriff as a result of an execution sale under a judgment for taxes obtained against the plaintiff, who at the time the tax judgment was rendered was the owner and under sentence for a felony. The railroad company did not pay the money into court, but defendant upon the filing of the commissioners' report filed an interplea alleging he was the owner of the land and that plaintiff had no title or interest therein and asking that the money be awarded to him, and plaintiff later filed a like interplea alleging he was the owner and that defendant's deed was void and asking that the money be awarded to him. The trial court rendered judgment adjudging the defendant to be the owner of the land and ordering that the money be paid to him when it was paid into court. It was not paid into court, but defendant testified that it was paid to him. *Held,* that the judgment did not have the effect of transferring the title to defendant, but the contest related solely to the fund, and not to the land. *Held,* further, that the statutory proceeding for the fund was one *in rem* and jurisdiction cannot exist without the *res,* and the statute providing for an interplea only when the award is paid into court and that not having been done, the court had no jurisdiction to consider the title to the land or to award the fund to defendant.

Appeal from Butler Circuit Court.—*Hon. J. P. Foard,* Judge.

REVERSED AND REMANDED.

*L. M. Henson* for appellants.

(1)  A convict confined in the penitentiary for a term less than life is civilly dead, and when his estate is being attacked by a suit, he can, under the statute, be in court only through a trustee, and no valid judgment affecting his property can be rendered until the trustee has been appointed and brought into court. Secs. 2891 to 2920, R. S. 1909; McLaughlin v. McLaughlin, 228 Mo. 635.  (2)  The judgment and proceedings in the case of the Butler County Railroad Company v. Murphy, Barron et al., did not affect the rights of the parties herein as the title to the land in question was not involved in that suit. The only ques-

tion adjudicated in that case between the parties to
this suit was the ownership of one hundred dollars in
money. Cox v. Barker, 150 Mo. 424; Price v. Blanken-
ship, 144 Mo. 203; Hilton v. City of St. Louis, 129 Mo.
389. (3) Neither of the appellants were parties to
the ejectment suit brought by Barron against Baurton,
and are not bound thereby. The deed made to Baur-
ton by Murphy was void for the reason that Murphy
was civilly dead at the time of its execution. Williams
v. Shackelford, 97 Mo. 322. Even if Baurton's deed
had been valid, Murphy still held a deed of trust on
the land and his interest could not be affected by a
judgment against Baurton.

*Lew R. Thomason* for respondent.

(1) A person confined in the penitentiary for a
term less than life, under the provisions of Sec. 2891,
R. S. 1909, is not *civiliter mortuus;* his civil rights
are simply suspended during the period of incarcer-
ation. R. S. 1909, sec. 2891. The civil rights of the con-
vict are not suspended until actually imprisoned in the
penitentiary. R. S. 1909, sec. 297; In re Morse, 117
Fed. 763; Harmon v. Bower, 17 L. R. A. (N. S.) 502.
The actual imprisonment of Murphy did not be-
gin until some time in February, 1903. He was sum-
moned to appear in the tax suit September 16, 1901,
ten months before he was first sentenced and seventeen
months before his imprisonment began. The court
having acquired jurisdiction over the person of Murphy,
and having jurisdiction of the subject-matter of an
action to enforce the lien of the State for delinquent
taxes, the judgment rendered in the tax case on the 19th
day of June, 1903, was not void. Had Murphy died a
natural death after the service of process upon him
and before the rendition of judgment against him, even
though his personal representative was not made a party
to the action or trustee appointed to represent him,
the judgment would not have been void, or subject to
collateral attack. Coleman v. McAnulty, 16 Mo. 173;
Castleman v. Relf, 50 Mo. 588; Bank v. Walters, 52 Mo.

35; Lewis·v. Combs, 60 Mo. 48; William v. Hudson, 93 Mo. 524; Shea v. Shea, 154 Mo. 599; ·Black on Judgments, sec. 200; Van Fleet on Collateral Attack, sec. 602; State ex rel. Potter v. Riley, 219 Mo. 684; Collins v. Mitchell, 5 Fla., 364; Claflin v. Dunne, 129 Ill. 241; Reid v. Holmes, 127 Mass. 326; Wood v. Watson, 107 N. C. 52; Swasey v. Antrem, 24 Ohio St. 87; Mitchell v. Schonlover, 16 Ore. 217; Giddings v. Steel, 91 Am. Rep. 336; Powell v. Washington, 15 Ala. 803; West v. Jordon, 62 Me. 484; Yaple v. Titus, 41 Pa. St. 195; Pugh v. McCue, 86 Va. 475; King v. Burdett, 57 Am. Rep. 687; Hays v. Shaw, 20 Minn. 405; Beard v. Roth, 35 Fed. 397; New Orleans v. Gains, 138 U. S. 595. Any attempt to impeach the judgment or decree of the court, in any proceeding not instituted for the express purpose of annulling or vacating said judgment or decree, and not instituted in the time and manner as provided by law, is a collateral attack. Van Fleet on Collateral Attack, secs. 2, to 4; Morill v. Morill, 20 Ore. 96; Thom v. Ireland, 88 Ky. 581; Hope′v. Harrison, 84 Tenn. 82; State ex rel. Potter v. Riley, 219 Mo. 684. (2) Circuit courts are courts of general jurisdiction, and when such a court has acquired jurisdiction, however erroneous ·or irregular its proceedings may be, its judgments are valid and binding until they have been reversed or annuled by suitable proceedings instituted for that purpose. And titles acquired by sales under them, by bona-fide purchasers, will not be affected, even though said judgment should be subsequently set aside. Jones v. ·Talbot, 9 Mo. 123; Coleman v. McAnulty, 16 Mo. 173; Choteau v. Nuckolls, 20 Mo. 442; Shields v. Powers, 29 Mo. 335; Fithian v. Monks, 43 Mo. 522; Gott v. Powell, 41 Mo. 416; Volger v. Montgomery, 54 Mo. 577; Johnes v. Hart, 60 Mo. 362; Macklin v. Allenburg, 100 Mo. 337; Shipman v. Smith, 154 Mo. 214; Hefferman v. Ragsdale, 199 Mo. 384; Board of Trustees v. Fry, 199 Mo. 563; Growdy v. Hall, 36 Ill. 313; Gray v. Bernardello, 1 Wall. U. S. 627; Vorhees v. Bank, 10 Pet. U. S. 450. (3) In the· case of the Butler County Railroad condemnation pro-

ceeding for a part of the lands in controversy, against Murphy and Barron, as defendants, the ownership of the land ʼin controversy was a direct issue upon the pleadings filed. The court found and adjudged Barron to be the owner. This decree was affirmed upon appeal. A question of the law, or fact, is *res adjudicata,* if it was a material issue in the proceedings, and not merely cognizable or collaterally in question, and was adjudged upon its merits. Van Fleet on former Adjudication, secs. 1 and 2; Mason v. Summers, 24 Mo. App. 174; Young v. Berg, 24 Mo. 590.

BROWN, C.—This suit was instituted in the Butler Circuit Court December 5, 1914, by petition containing two counts. The first of these is framed upon the provisions of Section 2535, Revised Statutes 1909, and is, omitting caption and signatures, as follows:

"Plaintiffs, for their cause of action, state that they are the owners of and claim the legal title to the following described real estate, lying, being and situate in the county of Butler, and State of Missouri, to-wit; all of the Southwest Quarter of the Southeast Quarter of Section Seventeen in Township Twenty-four north, Range Seven east, except a strip 100 feet wide heretofore condemned for railroad right of way.

"That the defendant claims some title, interest and estate in said land, which said title is based and predicated upon a void judgment rendered in the circuit court of Butler County, Missouri, in Tax Suit No. 6486, on the 19th day of June, 1903, and execution sale thereunder, wherein the State of Missouri, at the relation and to the use of John H. Souders, Collector of Revenue in and for the County of Butler and State of Missouri, was plaintiff, and plaintiff Joseph Murphy et al. were defendants.

"Plaintiffs further state that, at the time the judgment above referred to was rendered and at the time the sale thereunder was made, plaintiff Joseph Murphy was incarcerated in the Penitentiary of the State of Missouri, under and by virtue of a judgment and sent-

ence theretofore rendered in the circuit court of said Butler County, Missouri, against him, upon a charge of a felony, which said judgment and sentence was for a term of years less than life imprisonment, and that at the time said tax judgment was rendered and said sale was made, no guardian, trustee, nor legal representative was appointed by the court, nor did any such representative appear on behalf of the said Joseph Murphy in said proceedings.

"Plaintiffs further state that the claim of the defendant is adverse and prejudicial to the title and ownership of these plaintiffs in and to said land.

"Wherefore plaintiffs pray the court to set aside the judgment and sale above mentioned and to cancel the deed and all mesne conveyances made thereunder, and further pray the court to try, ascertain and determine the title of the parties hereto in and to said real estate, and, by its judgment and decree, define said title, and for such other orders in the premises as to the court may seem meet and just.

"And if the court finds that the claim of defendant in and to said real estate is founded upon the invalid tax sale above mentioned and that the defendant has, in good faith, paid any taxes on said land, under and by virtue of said claim, plaintiffs hereby tender the full amount of all of said taxes to the defendant, together with six per cent interest thereon from the dates the same were paid until this time, and hereby offer to pay the same as soon as the amount thereof, if any, is ascertained and determined by this court."

The second count is in the ordinary form in ejectment.

The second amended answer, upon which the cause was tried, sets forth the judgment for taxes pleaded in the first count of the petition, recites personal service of summons on Joseph Murphy, the defendant in that suit and plaintiff in this, on October 7, 1901, returnable to the next October term of the Butler Circuit Court; that on June 19, 1903, judgment was rendered in said cause in the amount of $8.97 for taxes

and also for the costs of said suit; that on July 31, 1903, special execution issued on this judgment and the land sold thereunder on October 5th to Charles F. Green, by whom it was conveyed on the 10th day of the same month to defendant; that on August 11, 1911, the Butler County Railroad Company began suit against Joseph Murphy, Sarah Murphy, William N. Barron and M. C. Horton to condemn a strip of the land one hundred feet wide for its right of way, alleging in its petition that the land was owned by one or another of the defendants in that suit; that the suit proceeded to an award by commissioners of $100 damages, which was paid into court for the owner, and the railroad company took possession, and that afterward Barron and Horton "filed an answer in said cause in the nature of an interplea," alleging their ownership of the land, both legal and equitable, and demanded the fund, while Joseph Murphy and Sarah Murphy, his wife, filed a like pleading asserting their own ownership and claiming the fund. At a trial of these issues on October 23, 1912, the Butler Circuit Court found that Barron was the owner of that land and awarded the fund to him. This was affirmed on appeal by the Murphys to the Springfield Court of Appeals. [173 Mo. App. 370.] These facts were pleaded in bar as an adjudication of the title to the land and also with other facts as constituting an estoppel *in pais*.

The answer also pleaded the Statute of Limitations of ten years by virtue of the provisions of Section 1881, Chapter 21, Article 8, and Section 1894, Chapter 21, Article 9, of the Revised Statutes. The answer to the second count admitted possession and pleaded limitations under the same statute.

Issue was joined by replication.

The following facts are admitted or uncontroverted. On and prior to August, 1901, the plaintiff Joseph Murphy was the owner in fee of the land in suit and is the common source of title. On August 10, 1901, an action was brought against him by the State at the relation of the collector of Butler County to recover

delinquent taxes for the year 1899, and summons issued therein on September 5, 1901, returnable at the October term, and was duly served. The action was continued at the return term and until the June term, 1903, when judgment was entered for $8 and costs of suit. On July 31, 1903, a special execution was issued in said cause, under which the land was, on October 5th, duly sold by the sheriff to satisfy said judgment. One Green became the purchaser, received a sheriff's deed therefor, dated October 7, 1903, and conveyed to Barron by quitclaim deed, dated October 10, 1903.

On July 23, 1902, Murphy was convicted in the Butler Circuit Court of a felony, and sentenced to a term of two years in the State Penitentiary. He was not at that time incarcerated in the Penitentiary under this sentence, but was held to answer another charge of felony pending in the same court, in which he pleaded guilty on February 13, 1903, and received a like sentence. He was then sent to the Penitentiary upon both sentences, and there remained confined until June, 1905, when he was discharged.

On June 26, 1902, the plaintiff, joined by his wife, conveyed the land in suit to Gus Baurton, who, with his wife, executed a deed of trust conveying the same land on the same day to Joseph Murphy, and on January 14, 1904, conveyed the same land by warranty deed to both these plaintiffs.

In 1904, at a date not otherwise mentioned in the record, the defendant Barron recovered in the Butler Circuit Court a judgment by agreement against Gus Baurton and Maggie Baurton, his wife, for the possession of the land in suit. The costs were adjudicated in favor of the Baurtons and against the plaintiff. The Murphys took possession of the land in controversy upon Joseph's release from the Penitentiary in 1905, and remained in possession by himself and his tenants up to the spring of 1914, when he was ousted by the sheriff under the judgment obtained by Barron against

Baurtons in 1904, and the defendant was placed in possession.

The respondent was vice-president and general manager of the Butler County Railroad Company, which instituted the suit for condemnation pleaded in the answer in this case, the object of which was to condemn a strip of land one hundred feet wide for right of way for the company's railway across this land. Commissioners were appointed to assess the damages, and after the filing of their report awarding damages in the amount of one hundered dollars with respect to this particular tract, respondent and one M. C. Horton filed a motion in the nature of an interplea alleging that they were the owners of the land and that appellants had no right, title or interest therein. The appellant, at the next term, filed a like plea containing a similar. allegation of ownership, and asking that the money, when paid into court, should be awarded to them. A trial was had upon these motions resulting in a judgment or order declaring Barron to be the owner and ordering the money paid to him when it should be paid into the court. The money was never paid into court. Barron testifies that it was paid to him.

I. This is in form an action to quiet title to forty acres of land in Butler County, Missouri, instituted under the provisions of Section 2535 of the present revision of our statutes. The petition, Joining Equitable in form, contains two counts; the first and Legal Issues. being in the usual form in actions under this statute. It also sets out that defendant's claim arises out of a tax judgment rendered against plaintiff while he was incarcerated in the Penitentiary of this State under sentence, and asks, in addition to the usual relief, that this judgment be set aside.

The second count is the ordinary one in ejectment.

The petition seems to have been framed in this form to take advantage of a favorable opinion of the court on either the legal or equitable theory of the right asserted. The defendant's title might be found

vulnerable to attack in equity or void in law. They are entitled, under the section cited, to the same broad relief in either case. If the plaintiffs are still seized of the legal title, notwithstanding the sheriff's sale, they may not only have possession, but also the removal of that cloud. [McLaughlin v. McLaughlin, 228 Mo., 1. c. 655.]

II.  Our Legislature has seen fit to provide that a sentence of imprisonment in the Penitentiary for a term less than life "suspends all civil rights of the person so sentenced during the term thereof," and that the person so sentenced "shall thereafter be deemed civilly dead."

*Convict.*

The words "civil rights" constitute a broad expression that, in its ordinary meaning, excludes access to the courts for every purpose other than to question the validity of the sentence, and no judgment could be rendered against him, because the personal jurisdiction of the court implies the constitutional right to appear and be heard.  The defendant argues that this cannot be true in this case, because there are many cases, constituting the greater weight of authority, which held that a judgment may be immune from collateral attack, although rendered against the name of one naturally dead.  There seems to us to be no analogy whatever between these classes of judgments.  The person naturally deceased leaves living an immediate unbroken succession to all his rights and interests.  The event that extinquishes his identity continues it in them, whether their interests arise in testamentary disposition, succession, or as creditors.  They have been haled into court by the process with which he has been served, and may appear, as the issue may indicate, either by themselves or by the legal representative which the law provides, to answer in their own behalf.  The deceased no longer needs protection.

One civilly dead through a sentence for a period which does not include the whole of his natural life stands in a different position.  His sentence does not

include the sequestration of his possessions. The whole measure of his punishment is fixed by the term of his imprisonment, which amounts to full satisfaction to the State for his crime. He will still need his possessions. when that satisfaction has been fully rendered, and it would ill become the State, which still owes him protection, to loot his estate through the action of its courts while disabling him from appearing to prevent it. Our State has by legislation fully recognized this duty by providing a method consistent with his full punishment, by which his estate may be preserved during its accomplishment. In the same article which pronounces him civilly dead it is provided (Section 2892) that he "is and shall be under the protection of the law." This is the key note of this statute. It is provided also, and evidently for the purpose of extending this protection, that upon the application of any of his relations or any relative of his wife or any creditor (Section 2896) the proper circuit court may appoint a fit person to be trustee of his estate (Section 2897), who may, after giving bond, prosecute and defend all actions commenced by or against the convict (Section 2901), and that the circuit court appointing him "may, at any time, order the sale, lease or mortgage of real estate, whenever the same shall be necessary for the payment of debts, or the support and maintenance of the family or the education of the children of such convict" (Section 2902), and shall settle all matters between him and his creditors (Section 2903), and "may, also, under the direction of the court, redeem all mortgages and conditional contracts, and all pledges of personal property, and satisfy judgments and decrees which may be an incumbrance on any property ordered to be sold, or he may sell such property, subject to such mortgage, pledges or encumbrances, as the court may direct" (Section 2904).

These are some of the provisions for the protection of a class which has been disabled, in the administration of the laws, from protecting themselves and their dependants. They embody a remedial system so just and

reasonable as to recommend them to the consideration of the court, both in their interpretation and administration. The right of the convict to protect himself by contract, to appear in court, or to exercise any other civil right, has been extinguished (William v. Shackleford, 97 Mo. 322), and in all these enactments the State has assumed his protection. This case illustrates the theory upon which it has acted. The State was his *creditor* to the extent of eight dollars. The officer charged with its collection, instead of pursuing the course so directed, waited until the convict had lost his right and power to defend himself in court, and then took this judgment and enforced it by the sacrifice of his forty acres of land for that amount, and the attorney representing the State in the proceeding became the owner through his own sale. The question upon which the validity of his title stands are not new to this court. They were before it in William v. Shackleford, supra, in which it was held that a mortgage executed by the convict while undergoing his sentence was void. The effect of the same statute was again before us in the late case of McLaughlin v. McLaughlin, 228 Mo. 635, in which the validity of a judgment of this character was thoroughly considered, both upon principle and authority.

In the McLaughlin case, the wife had secured a decree of divorce from her husband on the ground that he had been convicted of murder and sentenced to a term of ten years in the Penitentiary. The summons in the divorce case had been served on the convict in the Missouri Penitentiary. The court granted the divorce with the care and custody of the children, and by its judgment vested the title of the homestead in the wife. No question was made in this court as to the jurisdiction of the circuit court over the defendant for the purpose of granting the divorce, but it was contended by the defendant that the property of the convict was under the protection of the State and that the title to the land could only be affected through the intervention of a trustee appointed as provided in the statutes to which

we have referred. Assuming, as the parties assumed, that the convict was properly before the trial court for the purpose of the divorce, this court unqualifiedly sustained the plaintiff's contention that the judgment before it was void as to the disposition of the land. In this it only followed the plain provisions of the statute to which we have already referred.

Having arrived at the conclusion that the legal title to the land was unaffected by the sheriff's sale, it follows that it is vested in the plaintiffs. The fact that the defendant failed to demur for or otherwise plead a misjoinder of parties makes it unnecessary to further consider the status of the plaintiff's wife. They and those representing them continued in possession, either by themselves or their tenants, up to the spring of 1914. There being no evidence of any adverse possession until that time the pleas which refer to the Statute of Limitations need not be further considered. Nor does the voluntary payment of taxes by the defendant while plaintiffs and their tenants were in possession have any reference to the questions involving the legal title.

III. The controlling question in this case arises upon the effect of the "interplea" for the proceeds arising from the condemnation of the right of way of the Butler County Railroad Company. There was no money paid into court in that case. The respondent testified that it was paid directly to him. Both appellants and respondent were co-defendants in that case, and each presented a claim for the amount awarded by the commissioners when it should be paid. Each claimed title to the entire premises which was the subject of the award. The court after hearing the controversy determined, and so stated upon its record, that Barron was the owner and entitled to the compensation, and the railroad company paid it to him. There is nothing in the record, so far as we can find, showing the date of the filing or approval of the commissioners' report or the date of the payment of the money to

*Title by Estoppel: Condemnation Awards.*

Barron, or whether such payment was made before or after the filing of his interplea.  We note, however, from the opinion of the Court of Appeals, that after the filing of the interplea, and before the joinder of these appellants, they made an unsuccessful effort for an order upon the company to have it paid into court.

The question which is alleged to have been adjudicated in that proceeding is whether these appellants the Murphys, or the respondent Barron,. then held the legal title to the land in suit.  If this question of title was adjudicated, that adjudication constitutes the muniment on which it stands.  Otherwise, the title, as we have already said, still stands in Murphy, the admitted common source, and his wife.

The judgment which may have the effect of transferring the title to land by estoppel, must, of course, be pronounced by a court acting within the limits of a jurisdiction which authorizes it.  It follows that if the court in its pronouncement be acting by virtue of a special and limited statutory jurisdiction, it must look to the law conferring it.  We mention this rule in passing, because the judgment on which the respondent relies was entered in the exercise of a power which we have justly characterized as "most extraordinary," and of which we have said: "Its exercise often operates oppressively as well as vexatiously to the citizen whose property is taken.  Such high prerogative is only allowed 'where the plain letter of the law permits it, and under a careful observance of the formalities prescribed for the owner's protection.' " [Railway v. Railway, 138 Mo. 591, quoting from Cooley's Constitutional Limitations, page 651.]

The jurisdiction exercised in the appropriation of land for public purposes is circumscribed by Section 21 of Article 2 of the State Constitution, which distinctly provides with respect to compensation that "until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested." It is not contended here that the compensation was paid to

the then owner, nor was it ever paid into court for any purpose. On the contrary, the court refused to order its payment and a situation was thereby created in which these appellants felt compelled to apply to the court for an order that it be paid directly to them. The situation was thus created in which we are now called upon to determine whether the court acted within its jurisdiction in making the order that it be paid by the railway company directly to this respondent, so that its act amounted to an adjudication of this title. The money was in the possession of the railroad company. It owed it to neither of the claimants, as the condemnation was not complete. Nothing but its payment into court or to the true owner, could complete it. It asked no advice for the court. Its managing officer was himself a claimant of the fund and it simply stood by to wait what he might do in its interest or his own, as the case might be.

The statute authorizing the condemnation proceeding (1909, Sec. 2360) provides as follows: "It shall not be necessary to make any persons party defendant in respect to their ownership, unless they are either in actual possession of the premises to be affected claiming title, or have a title to the premises appearing of record upon the proper records of the county." The company conformed to this provision by making both Murphy, who was in possession claiming title, and Barron who held a recorded sheriff's deed, the defendants. Under these conditions commissioners were appointed to assess the damages for the appropriation of the right of way through the land, which of course included not only the value of the strip, but also the amount of damages to the entire tract resulting from the use appropriated. It was thereupon necessary for the railroad company to pay *to the clerk of the court in which the proceeding was pending* the amount of damages so assessed, within ten days from the filing of the report, unless it should elect within that time to abandon the proposed appropriation, which it might do subject to the payment of costs and damages. [Railway v. Railway, 138 Mo. 591.] Upon the payment to the clerk the Railway Company

was out of the contest. [Id., Sec. 2362.] It had nothing to do with the rights of those sued as owners. Nor had they anything further to do with the condemnation proceeding. In the absence of an appeal from the assessment, and no appeal was taken in this case, the condemnation was closed and the book sealed. Any contest which the former claimants might then have related solely to the fund, and not to the land, and involved no question pertinent to the contest between the company and the owners.

That this is the theory upon which the statute relating to the condemnation of lands for public uses is framed is evident. By its terms the public suffers no delay in the acquisition of the land, and the claimants are given a fund which in every respect constitutes the subjeect-matter of any controversy which they may have had with reference to its ownership. The process is not given in aid of any private controversy, but to serve a public purpose. Thenceforth the company, a mere agent for the public with reference to its easement, may not be permitted to use its extraordinary powers as such agent in aid of a personal controversy in no way related to its public function. The jurisdiction of the court in the determination of such. collateral controversies arises from the possession of the fund alone. The proceeding is *in rem* and jurisdiction cannot exist without the *res*. It was no more effective to determine which of these parties was the owner of the land than would be the determination of arbitrators outside the court. It is unnecessary to determine what effect a judicial determination of the ownership of such a fund in the hands of the clerk might have upon the collateral question of ownership of the remaining land.

It necessarily follows from what we have here said that the judgment is reversed and the cause remanded to the Butler Circuit Court for further proceedings in accordance with this opinion. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All of the judges concur; *Bond, P. J.,* in the result.