**Douglas W. THOMPSON and Gary Vincent Johnson, Plaintiffs,**

v.

**Christopher BOND, Governor, State of Missouri, and John C. Danforth, Attorney General of Missouri, Defendants.**

No. 74 CV 91–C.

United States District Court,
W. D. Missouri, C. D.

Oct. 15, 1976.

James W. McManus of Shughart, Thompson & Kilroy, Kansas City, Mo., for plaintiffs.

William F. Arnet, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

Before GIBSON, Circuit Judge, and COLLINSON and HUNTER, District Judges.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

Plaintiffs Douglas Thompson and Gary Johnson, both prisoners confined in institutions under the jurisdiction of the Missouri Department of Corrections, bring this action on behalf of all inmates of the Missouri penal system, seeking to have this Court declare unconstitutional and enjoin the enforcement of the Missouri civil death statute, Mo.Rev.Stat. § 222.010 (1969). A three-judge court was duly requested and empanelled as required by law.[1]

Plaintiff Douglas Thompson is an inmate of the Missouri Department of Corrections, currently confined at the correctional institution in Moberly, Missouri, pursuant to a sentence for life following a conviction in a state court of Missouri. Plaintiff Gary Johnson[2] is an inmate of the Missouri Department of Corrections at Jefferson City, Missouri, where he is serving a term of 99 years following a conviction in a state court.[3]

Plaintiffs seek an Order of this Court permitting this action to proceed as a class action, contending that this cause falls within the requirements of all of the three subdivisions of Fed.R.Civ.P. 23(b). Having carefully considered the facts herein, the allegations of plaintiffs' amended complaint, and plaintiffs' suggestions supporting the motion for an Order designating this case as a class action, the Court has determined that the requirements of Rule 23(a) and 23(b)(2) have been met. Accordingly, this cause will be certified to proceed as a class action under Rule 23(b)(2) and plaintiffs will be allowed to represent the

---

1. Pub.L.No. 94–381 (Aug. 12, 1976) severely restricts the types of actions requiring the convening of a three-judge court. The law applies only to actions filed after the date of enactment. As this action was commenced prior to August 12, 1976, the convention of a three-judge court was proper.

2. Mr. Johnson has been substituted as a plaintiff in place of Mr. James E. Williams, the original plaintiff, who no longer is incarcerated in the Missouri State Penitentiary.

3. There is no question in this case that plaintiffs Thompson and Johnson have the requisite standing to maintain this action. The record shows that § 222.010 is operative as to each of them and that they both entertain the desire to institute civil actions in the Missouri state courts. Therefore, plaintiffs have been injured in fact due to the preclusive effect of the statute on their ability to commence their civil actions. See *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

class of all adults presently incarcerated in Missouri penal institutions pursuant to a conviction in a Circuit Court of the State of Missouri and sentence of imprisonment for a term of years or life.

## I.

Mo.Rev.Stat. § 222.010 (1969), the civil death statute, provides:

> A sentence to imprisonment in an institution within the state department of corrections for a term less than life suspends all civil rights of the persons so sentenced during the term thereof, and forfeits all public offices and trust, authority, and power; and the person sentenced to imprisonment for life shall thereafter be deemed civilly dead.

Plaintiffs do not challenge the provision in § 222.010 for forfeiture of "all public offices and trust, authority, and power". The challenge herein is directed solely to that portion of the statute which "suspends all civil rights of the persons so sentenced during the term thereof" and the provision that "the persons sentenced to imprisonment for life shall thereafter be deemed civilly dead."

The so-called "saving statute", Mo.Rev. Stat. § 516.170, provides:

> If any person entitled to bring an action in sections 516.100 to 516.370 specified, at the time the cause of action accrued be * * * in execution under a sentence of a criminal court for a less term than for his natural life, such persons shall be at liberty to bring such actions within the respective times in sections 516.100 to 516.370 limited after such disability is removed.

Plaintiffs contend that the two statutes act as a bar to prevent all inmates in the Missouri prison system from bringing suit in the state courts and as a result have deprived plaintiffs and other convicted persons of their rights under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Although no legislative history exists, a number of state court decisions have helped to clarify the scope of Missouri's civil death statute. First, the statute destroys or suspends a prisoner's right to enter into any contract or judicially enforceable instrument. *Williams v. Shackleford*, 97 Mo. 322, 11 S.W. 222 (1889); *Jandro v. Jandro*, 246 S.W. 609 (Mo.App.1923); *Gray v. Gray*, 104 Mo.App. 320, 79 S.W. 505 (1904). Second, a state prisoner in Missouri is unable to file any civil action in the courts, other than those related to the validity or constitutionality of his confinement, as long as he is incarcerated. *Hill v. Gentry*, 182 F.Supp. 500 (W.D.Mo.), *rev'd on other grounds*, 280 F.2d 88 (8th Cir. 1969). Thus, the civil litigation barred by § 222.010 includes lawsuits of a personal nature not affecting real and personal property, such as a suit for divorce, see *McLaughlin v. McLaughlin*, 228 Mo. 635, 129 S.W. 21 (1910), or a personal injury action. *Hill v. Gentry, supra*; see Note, "The Collateral Consequences of a Criminal Conviction," 23 Vanderbilt L.Rev. 929, 1023 (1970). Defendants neither dispute these interpretations of the statute's effect nor deny that the statute on its face suspends the civil rights of prisoners.

## II.

Plaintiffs contend that § 222.010 operates to infringe upon their First Amendment protections. Although the First Amendment itself is merely a limitation against federal abridgment of the rights embodied in that amendment, the due process clause of the Fourteenth Amendment prevents any denial of those rights by the states. *DeJonge v. Oregon*, 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278 (1936).

The First Amendment to the United States Constitution guarantees that Government will make no law abridging the right of the people to petition the Government for redress of grievances. Central to this right to petition is the right of access to the courts. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1971); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Inmates cannot be de-

nied the opportunity to petition courts for writs of habeas corpus, *Ex Parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), and any restriction which unduly impinges upon a prisoner's right to seek habeas corpus relief is invalid. *Johnson v. Avery, supra*. The Supreme Court has expanded this principle by recognizing that prisoners possess the right of access to courts for the purpose of redressing constitutional violations. *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); see *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). These cases support the general proposition that inmates cannot be denied access to courts to seek relief from or remedies for certain unconstitutional activities which are intimately and directly related to their incarceration.

▮▮▮▮ Plaintiffs do not and cannot contend that the Missouri civil death statute denies them the opportunity to seek post-conviction relief in the Missouri courts since Missouri Supreme Court Rule 27.26 grants them that right. Rather, plaintiffs contend that they are constitutionally entitled to file suits which arise out of activities unrelated to their incarceration and that the civil death statute deprives them of that right. We agree that a state statute, which in broad and unqualified language, deprives all state inmates of the right to file any type of civil action in state court contravenes the constitutional imperative that citizens are entitled to reasonable access to courts. Cf. *Conway v. Oliver*, 429 F.2d 1307 (9th Cir. 1970). As stated in *Cruz v. Beto, supra*, 405 U.S. at 321, 92 S.Ct. at 1081:

> But persons in prison, like other individuals, have the right to petition the Government for redress of grievances which, of course, includes "access of prisoners to the courts for the purpose of presenting their complaints." *Johnson v. Avery*, 393 U.S. 483, 485 * * * 89 S.Ct. 747, 21 L.Ed.2d 718.

This right cannot reasonably or logically be limited to habeas corpus or related actions. "[T]he constitutional protection of access to the courts is much broader, for it includes access to all courts, both state and federal, without regard to the type of petition or relief sought." *Hooks v. Wainwright*, 352 F.Supp. 163, 167 (M.D.Fla.1972). A blanket proscription against the filing of all non-frivolous [4] lawsuits is contrary to the principles of due process. The statute is an archaic remnant of an era which viewed inmates as being stripped of their constitutional rights at the prison gate. The contemporary view that prisoners retain their due process rights, *Wolff v. McDonald*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), provides support for our conclusion that inmates are constitutionally entitled to seek various forms of relief through the state court structure.[5]

Our conclusion that the civil death statute contravenes plaintiffs' right of access to the courts does not end our inquiry. Defendants seek to uphold the validity of the statute by contending, first, that it effects only an insubstantial infringement upon the rights of inmates, and, second, that in any event there are sufficient governmental interests to justify the restrictions embodied in the civil death statute.

### III.

▮▮▮▮ Defendants contend that the civil death statute effects only an insubstantial restriction on the plaintiffs' right of access

---

4. In the present action we are not considering the question of whether a state can implement legislation or whether courts can pursue procedures aimed at preventing repetitive or patently frivolous prisoner lawsuits. A situation may arise where a prisoner has flagrantly abused his right of access to the courts to an unacceptable degree. Different considerations might then be invoked and we do not express any opinion as to the propriety of limiting access to the courts in those situations.

5. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), ruled that states could not, consistent with due process, deprive indigent individuals of access to courts for the purpose of dissolving the marital relationship. To the extent that the Missouri civil death statute precludes inmates from instituting divorce proceedings, it is inconsistent with the principles of *Boddie*. Cf. *Bush v. Reid*, 516 P.2d 1215 (Alas.1973).

to the courts for two reasons: (1) Mo.Rev. Stat. Ch. 460 (1969) [6] provides some protection to inmates since it permits the appointment of a trustee for a prisoner and (2) Mo.Rev.Stat. § 516.170 tolls the statute of limitations for prisoners serving a sentence of a term of years, thus permitting a belated filing of civil actions.

■ Under § 460.010 the appointment of a trustee is not automatic upon the incarceration of a prisoner. Nor does the statute appear to give the prisoner the power to apply for the appointment of a trustee. Thus, although a prisoner must have a trustee appointed to protect his estate when a third party files an action against him, *State v. Nolte*, 350 Mo. 271, 169 S.W.2d 50 (Mo.1943); *Wamsley v. Snow*, 331 Mo. 261, 53 S.W.2d 258 (Mo.1932); *Murphy v. Barron*, 275 Mo. 282, 205 S.W. 49 (Mo.1918); *McLaughlin v. McLaughlin*, 228 Mo. 635, 129 S.W. 21 (Mo.1910), the statute provides no guarantee that a prisoner himself may secure the appointment of a trustee, that a trustee will be appointed if a prisoner desires to take affirmative action to protect his estate before he is sued, or that a prisoner will have any say in what the trustee does when appointed. *Gray v. Gray*, 104 Mo.App. 520, 79 S.W. 505 (1904); *see Brown v. Brown*, 444 S.W.2d 1 (Mo.App.1944); *McLaughlin v. McLaughlin, supra.*

■ Moreover, once a trustee is appointed, he is empowered only to take charge of and manage the prisoner's estate. While his powers include preservation of the prisoner's property, including the collection of contractual debts or obligations owed to the prisoner, the prosecution of civil actions pending at the time of incarceration, and the execution of contracts to preserve the prisoner's estate, the trustee's power is subject to extensive limitations. For example, the trustee can sell or lease the prisoner's real estate only when the action is "necessary for the payment of debts, or the support and maintenance of the family * * *" and only by specific direction of the court. Mo.Rev.Stat. § 460.130 (1969). The statute grants no authority for the trustee to sell or encumber a prisoner's property when the prisoner requests such action for personal reasons. Further, and perhaps most significantly, the statute fails to explicitly empower a trustee to file a civil action for injury suffered by the prisoner, to his person or otherwise, subsequent to his incarceration.[7] Finally, Chapter 460 fails to remedy the deprivation of a prisoner's right to bring an action for divorce. Therefore, this Court rejects defendants' argument that the injury to prisoners' property and liberty interests is in any way minimized by Chapter 460.

Defendants also contend that plaintiffs' injuries are not substantial since the "saving statute", § 516.170, alleviates the effect of § 222.010 by tolling the statute of limitations for those causes of action which ac-

---

6. Chapter 460 provides:
    Whenever any person shall be imprisoned in the penitentiary, a trustee, to take charge of and manage his estate, may be appointed by the circuit court of the county in which such convict last resided; or if he have no place of residence, then by the circuit court of the county in which the conviction was had, on the application of the wife of the convict, or any of her relatives, or any relative of the convict, or any creditor of such convict.

7. While defendants contend that nothing in the statute prevents a trustee from filing an action in behalf of a prisoner, counsel were unable to bring to the Court's attention any instance where a trustee had filed such an action arising out of either personal injury or contract. Moreover, plaintiffs' Exhibit A, attached to the Supplemental Brief in Support of plaintiffs' Amended Complaint, sets forth the opinion of the Missouri Attorney General with respect to the application of the civil death statute where state prisoners attempt to institute civil personal injury actions. The exhibit, a copy of a pleading filed by the Attorney General in the case of *Gary Eldridge, Trustee v. Dr. Leo Baker*, now pending in the Circuit Court of Jackson County, Missouri, in Case No. CV 75–0650, Civil Division B, states:
    The defendant submits that in light of the controlling case law, the only logical interpretation of Chapter 460, is that a trustee appointed under the provisions of the chapter is without power to institute civil personal injury actions on behalf of the inmate in state court. Consequently, the plaintiff herein, Gary Eldridge, is without legal capacity to maintain the instant suit and it should be dismissed for this reason.

crue to prisoners while they are incarcerated for a term of years. However, the Court is unconvinced that the only injury suffered thereby is insubstantial in a constitutional sense. Defendants' argument ignores the reality which the Eighth Circuit Court of Appeals has recognized in *Peterson v. Nadler*, 452 F.2d 754, 756 (1971), where it stated:

> To delay the action until plaintiff is released from prison could conceivably forever deny his securing presently available evidence which he alleges is necessary to prove his claim * * *. And to arbitrarily deny even the bare opportunity to process his claim for an indefinite number of years could well render the legal process meaningless for this plaintiff.

As plaintiffs have asserted, during the prisoner's incarceration key witnesses may die or disappear, and their memory of relevant events will fade. Prospective defendants may die, disappear or become insolvent. As time passes, the delay occasioned by the tolling statute often will render the prisoner's subsequent action meaningless. Moreover, with respect to prisoners incarcerated for a term of life, § 516.170 offers no tolling provision whatsoever. *See Hunter v. Hunter*, 361 Mo. 799, 237 S.W.2d 100 (Mo.1951). Thus the Court finds the provisions of Mo. Rev.Stat. § 516.170 insufficient to support the argument that § 222.010 inflicts only insubstantial injuries upon inmates of Missouri prisons.

We therefore conclude that neither Mo. Rev.Stat. Ch. 460 nor Mo.Rev.Stat. § 516.170, either individually or collectively, operates to mitigate the constitutional deprivation occasioned by the civil death statute.

## IV.

■ Defendants contend that depriving prisoners of access to the courts is justified by governmental interests. Since restricting access to courts implicates the guarantees of the First Amendment, only a compelling state interest will permit an infringement of that right. *N.A.A.C.P. v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

■ Defendants contend that the civil death statute restricts the filing of frivolous lawsuits and that the disruptive effect delivered upon the prison administration by allowing inmates to file civil actions in state courts—including the difficulty and expense of transportation and conference within and without the institution during pretrial discovery and trial—would be great and significant, thereby justifying the restrictions which the statute imposes. This Court believes the justifications raised by defendants in support of § 222.010 are insufficient to warrant the statute's substantial infringement upon plaintiffs' fundamental rights. While prevention of spurious lawsuits and avoidance of disruptions in prison administration are constitutionally permissible state objectives, defendants have failed to demonstrate a clear relationship between these enunciated governmental interests and the challenged statutes. *Delorme v. Pierce Freightlines Co.*, 353 F.Supp. 258, 260 (D.Ore.1973).

■ Defendants have submitted no empirical data or documentary evidence to show that prisoners are inherently inclined to file spurious lawsuits. Even if it could be established that many prisoner suits are frivolous, a statute foreclosing the filing of all prisoner suits, regardless of their merit, would be overbroad. *Delorme v. Pierce Freightlines Co., supra* at 260; *see Buckley v. Valeo*, 424 U.S. 1, 17–20, 96 S.Ct. 612, 634–635, 46 L.Ed.2d 659 (1976). The state could conceivably have adopted less extreme alternatives to effectuate its desire to stifle spurious prisoner suits.

We likewise do not perceive that permitting the filing of prisoner suits in state court would disrupt prison administration or interfere with any institutional objectives. In most instances, as plaintiffs assert, prisoners need not be brought to the courtroom to resolve a civil matter. Where the prisoner's testimony is important, the court can direct him to submit an affidavit or suggest a deposition at the prison. Various courts have ruled that a prisoner has no

constitutional right to be present at a civil trial, *e. g. Potter v. McCall*, 433 F.2d 1087, 1088 (9th Cir. 1970), and therefore a civil suit need not necessarily disrupt the prison routine by requiring transportation to and from the court. Finally, the Court cannot fail to note that the concept of civil death has been condemned by virtually every court and commentator to study it over the last thirty years.[8] Only approximately 13 states have yet to abolish their civil death statutes,[9] and neither the practice elsewhere nor any evidence mustered by defendants for this Court's attention indicates that abolition of civil death has adversely affected prison routine or overburdened correctional administrators or state courts in other jurisdictions.[10] Indeed, the fact that the administrative inconvenience asserted by defendants is not critical is evidenced by the state's failure to bar suits by non-inmates against inmates.

■ The substantial infringement of plaintiffs' right of access to courts imposed by the Missouri civil death statute is not justified by a compelling government interest. Therefore, the statute violates plaintiffs' right to due process of law.[11]

## V.

■ The final matter pending before this Court is plaintiffs' motion for award of attorney's fees and costs in pursuing this litigation. The Court acknowledges the diligent and capable representation afforded plaintiffs by their court-appointed counsel, Mr. James McManus of Kansas City, Missouri, and expresses its gratitude for Mr. McManus' time and efforts exerted in this cause. Unfortunately, no statutory authority exists for the award of attorney's fees and costs in such an action and, accordingly, plaintiffs' motion must be denied.

## VI.

For all the foregoing reasons, therefore, it is hereby

ORDERED that this cause proceed as a class action under Fed.R.Civ.P. 23(b)(2), with plaintiffs herein representing the class of all adults presently incarcerated in Missouri penal institutions pursuant to a conviction in a Circuit Court of the State of Missouri and sentence of a term of years or life; and it is further

ORDERED that Mo.Rev.Stat. § 222.010 (1969), insofar as it purports to suspend the

---

8. See e. g., *Delorme v. Pierce Freightlines Co., supra; Bush v. Reid, supra;* Cohen and Rivkin, "Civil Disabilities: The Forgotten Punishment," Federal Probation 19 (1971); Note, "Arizona's Living Dead: Civil Death and Civil Disabilities in Arizona," Arizona State L.J. 137, 152 (1975); Note, 23 Vanderbilt L.Rev. 929, *supra;* Note, 48 Yale L.J. 912 (1939); see *Johnson v. Rockefeller,* 58 F.R.D. 42, 48–49 (S.D.N. Y.1972). The concept of civil death, which can be traced back to the Greeks and Romans and was adopted in England in the 12th Century as part of the punitive practice of killing or burdening for life those individuals who violated the law, 23 Vanderbilt L.Rev. at 941–50, has been characterized in recent years as "archaic", "outmoded and medieval", "an anachronistic procedural incapacity", "an outdated and inscrutable common law concept", and "a medieval fiction in a modern world".

9. See 23 Vanderbilt L.Rev. 929, 951. In the last seven years Kansas, Idaho, New York and South Dakota have repealed their civil death statutes by legislation, and Oregon's civil death statute has been declared unconstitutional. *Delorme v. Pierce Freightlines Co.,* 353 F.Supp. 258 (D.Ore.1973).

10. See e. g., 23 Vanderbilt L.Rev. 929, 1178–1179.

11. Since we have invalidated the Missouri civil death statute on due process grounds, there is no need to discuss plaintiffs' equal protection contentions. We deem it significant to note the limitations inherent in our disposition of this case. We are not concerned with the issue of whether an inmate is entitled to legal assistance and access to sufficient legal research material to aid him in preparing for a typical civil suit to be instituted in state court. See *Gilmore v. Lynch,* 319 F.Supp. 105 (N.D.Cal. 1970), *aff'd sub nom. Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). Nor are we addressing the issue of whether an inmate can be constitutionally required to pay a filing fee to institute a civil action. See *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Boddie v. Connecticut, supra.* We simply hold that a state cannot, consistent with due process, foreclose all inmates from filing non-frivolous lawsuits in state courts.

civil rights or declare the civil death of adults sentenced to imprisonment in an institution within the Missouri Department of Corrections for a term of years or for a term of life, is unconstitutional, null and void, in violation of the First and Fourteenth Amendments to the Constitution of the United States, and enforcement thereof shall be, and is hereby, enjoined; and it is further

ORDERED that plaintiffs' motion for award of attorney's fees and costs be, and it is hereby, denied.