STATE ex rel., Milo
HENDERSON, Relator,

v.

Honorable Channing D. BLAEUER,
Judge and Randolph County
Circuit Court, Respondents.

No. WD 38622.

Missouri Court of Appeals,
Western District.

Jan. 27, 1987.

Milo Henderson, pro se.

Rex Gump, Hulen, Hulen, Tatlow & Gump, Moberly, for respondents.

Before BERREY, P.J., and PRITCHARD and DIXON, JJ.

ORIGINAL PROCEEDING IN MANDAMUS

BERREY, Presiding Judge.

By mandamus the relator seeks a writ commanding the respondent circuit court judge "to allow this cause to proceed and to grant Relator the write [sic] to file and receive a dissolution of marriage without the prepayments of court costs and filing fees. However, relator is willing to make monthly payments of the publication notice."

Petitioner, an inmate at the Missouri Training Center for Men at Moberly, Randolph County, Missouri, filed a petition for dissolution of marriage, a request for notice by publication, and a request to proceed in forma pauperis. In due course Judge Blaeuer heard evidence on the matter and found that: (1) defendant was not a resident of Randolph County, and (2) that he would not permit relator to proceed in forma pauperis. From this the relator sought mandamus.

In his pro se brief, relator's sole point is the trial court erred in determining he was not a resident of Randolph County.

Relator alleges he is a resident of Randolph County by virtue of his incarceration there. As authority for his position he cites *Carron v. Carron*, 631 S.W.2d 660, 661 (Mo.App.1982), which holds that, "Residency for ninety days next preceding the commencement of the proceedings is a jur-

isdictional requirement." The relator has confused residency and venue.

■ In order for the relator to create a residence, two happenings are required: (1) there must be actual bodily presence in the place, and (2) this must be combined with a freely exercised intention of remaining either permanently or for an indefinite period of time. *Barth v. Barth,* 189 S.W.2d 451, 454 (Mo.App.1945). Bodily presence alone or intention alone will not suffice to create a residence. While the relator obviously meets the first test it cannot be said that his involuntarily incarceration rises to the level required by the second prong of this requirement.

Our research has failed to disclose authority regarding the residency of incarcerated persons. However, 25 Am.Jur.2d *Domicile,* § 41 (1966), states:

> A person does not ordinarily gain or lose a domicile by becoming an inmate or patient in a public institution, but retains the domicile he had at the time of his entry into the institution.... One incarcerated in a prison has no domicile at that place, the requisite intent or desire to make a home there being absent. Domicile of a prisoner is characterized in 28 C.J.S.

*Domicile* § 12g(7) (1941), as follows:

> Generally, a person's domicile is not changed by involuntary confinement in a penitentiary or other prison, but in such case his former domicile remains. Accordingly, a pauper prisoner retains his former settlement or domicile.

Section 452.300.1, RSMo 1986, provides:

> The rules of the supreme court and applicable court rules apply to all proceedings under sections 452.300 to 452.-415. The proceedings shall be had in the county where the plaintiff resides, and the proceedings may be directed, in the first instance, in any other county in the state where the defendant resides.

The county where the relator last resided before his incarceration is the proper county to commence his action for dissolution of marriage. From the record it appears that the defendant last resided in St. Louis City and, in fact, had a suit for dissolution on file in St. Louis City Circuit Court which was subsequently dismissed for want of prosecution on September 23, 1981.

As used in § 452.300(1), RSMo 1986, the word resides is equivalent to "is domiciled in." *In re Marriage of Bradford,* 557 S.W.2d 720, 728 (Mo.App.1977). The record herein supports a finding that the petitioner's marital domicile was in St. Louis City and that the venue of the action is not Randolph County.

The court stated in *State ex rel. Marlo v. Hess,* 669 S.W.2d 291, 294 (Mo.App.1984), that "an action may be entertained by a Circuit Court having jurisdiction of the subject matter where the *parties* have contractually agreed to waive the personal privilege of venue and where such agreement is neither unfair nor unreasonable."

■ To permit marriages to be dissolved through improper venue, unless there is a knowing and intelligent waiver of the venue, would be against public policy.

■ Both relator's brief and reply brief are devoid of argument or authority referring to Judge Blaeuer's decision that defendant could not proceed as a poor person. This decision prohibited relator from obtaining publication for this proceeding. The court takes up the issue of publication in dissolution of marriage cases of paupers sua sponte. *State ex rel. Taylor v. Clymer,* 503 S.W.2d 53 (Mo.App.1973), provides that a county is obligated to pay for substituted service by way of publication where indigent parties through proper application sought a dissolution of marriage in the *county of their residence.* Under § 476.-270, RSMo 1986, payment of expenditures accruing in the circuit courts are to be paid by the treasury of the county. It is therefore a county expense when such expenditure has been made and certified for payment by the circuit court and it is the plain duty of the county to pay the expense.

The relator may proceed to bring his dissolution action in St. Louis City.

The alternative writ of mandamus is dismissed as having been improvidentially granted.