STATE of Missouri ex rel. Danny
Ray KITTRELL, Relator,

v.

The Honorable Robert L. CARR, Associate
Circuit Judge, 24th Judicial Circuit,
Washington County, Missouri,

and

The Honorable Gary P. Kramer, Circuit
Judge, 23rd Judicial Circuit, Jefferson
County, Missouri, Respondents.

No. 64715.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 28, 1994.

**860**

Danny Ray Kittrell, Mineral Point, for relator.

Jeremiah Willson Nixon, Jefferson City, Gary P. Kramer, Hillsboro, for respondents.

CRAHAN, Judge.

Relator, Danny Ray Kittrell, a prisoner at the Potosi Correctional Center situated in Washington County, filed this original proceeding in mandamus seeking alternative relief against the respondent judges, alleging that, individually or in combination, they are exceeding their lawful authority and denying him meaningful access to the courts in his effort to obtain a dissolution of his marriage.

Specifically, Relator seeks an order requiring respondent Judge Kramer to rescind his dismissal of Relator's petition for dissolution of marriage, after Relator's wife had defaulted. The action was dismissed due to Relator's failure to appear in person at the default hearing in Jefferson County. It is undisputed that Relator failed to appear at the default hearing because he was incarcerated and his request for a writ of habeas corpus ad testificandum had been denied by Judge Kramer pursuant to § 491.230 RSMo Cum. Supp.1993.[1] Alternatively, Relator seeks an order directing respondent Judge Carr to rescind his *sua sponte* dismissal of Relator's subsequent petition for dissolution of marriage filed in Washington County for lack of proper venue. We issued our preliminary writ of mandamus directed to both respondents. We now order that our preliminary writ be made absolute as to Judge Kramer and quash the writ as to Judge Carr.

The undisputed facts are as follows:

On November 12, 1992, Relator filed a verified petition for dissolution of marriage and motion for leave to proceed in forma pauperis in the Circuit Court of Jefferson County. Relator was granted leave to proceed in forma pauperis and process was issued. On December 22, 1992, the sheriff filed his return reflecting service on Relator's wife on December 14, 1992.

On January 19, 1993, Relator filed his pretrial compliance pursuant to local rules.

On February 25, 1993, Relator moved for a default judgment based on his wife's failure to file an answer or otherwise defend.

On March 3, 1993, Judge Kramer entered an order granting "default and inquiry," further stating that Relator should contact the court clerk for a default hearing date.

On March 7, 1993, Relator wrote to the clerk to request that the default hearing be docketed. Relator also asked the clerk to advise whether it was necessary for him to appear in person at the default hearing, stat-

---

1. Section 491.230.2 RSMo Cum.Supp.1993 provides, in relevant part:

    2. No person detained in a correctional facility of the department of corrections shall appear and attend or be caused to appear and attend any civil proceeding, regardless of whether he is a party, except in those instances in which the offender is a respondent in a chapter 211 proceeding to terminate parental rights.

ing that he would file a petition for writ of habeas corpus ad testificandum if his appearance was required. A copy of the letter was returned to Relator with a handwritten "yes" after the question concerning the need for Relator to appear personally at the hearing.

On March 12, 1993, the court scheduled the matter for a "Non–Contest/Default setting" on May 13, 1993.

On March 29, 1993, Relator filed a writ of habeas corpus ad testificandum, which was denied by Judge Kramer.

On April 8, 1993, Judge Kramer wrote to Relator to explain that he had denied the petition for writ of habeas corpus ad testificandum because the Missouri statutes had recently been amended to prohibit such writs for ordinary civil cases, such as Relator's dissolution of marriage case, and thus he could not grant Relator's request to appear to testify.

On June 29, 1993, Judge Kramer filed a Memorandum stating that the cause had been called for mandatory pre-trial conference, that neither party had appeared either in person or by attorney, and that the action was therefore dismissed without prejudice for failure to prosecute.

On July 19, 1993, Relator filed a letter seeking reconsideration and pointing out that his wife remained in total default and that it was impossible for him to appear either personally, due to the court's denial of his petition for writ of habeas corpus ad testificandum, or by counsel, due to his lack of funds. Relator again moved for a default judgment. The motion for reconsideration was denied.

Thereafter, on August 4, 1993, Relator filed an identical petition for dissolution of marriage in the Circuit Court of Washington County and again sought leave to proceed in forma pauperis.

On August 16, 1993, respondent Judge Carr filed a letter addressed to Relator raising, *sua sponte*, the issue of venue. Judge Carr informed Relator that a petitioner for dissolution of marriage is not a resident of the county of his incarceration for venue purposes and that the county where the prisoner last resided before incarceration is the proper county in which to commence an ac-

tion for dissolution of marriage, citing *State ex rel. Henderson v. Blaeuer*, 723 S.W.2d 589, 590 (Mo.App.1987). Noting that Relator's affidavit disclosed that he was a resident of Jefferson County at the time of his incarceration, Judge Carr advised Relator that his action should be filed in Jefferson County and that he had ordered the action dismissed without prejudice.

On August 23, 1993, Relator filed a "Waiver of Venue" and a letter addressed to Judge Carr seeking reconsideration and reinstatement of the petition. Relator cited case authorities for the proposition that venue is ordinarily a personal privilege and can be waived by the parties. Relator took the position that proper venue was not in issue unless raised as a defense by motion or by the respondent's answer and stated that it was unlikely that the matter would be contested. On August 26, 1993, Judge Carr denied the motion for reconsideration.

Relator then filed the instant petition for writ of mandamus in this court seeking, alternatively, an order directing Judge Kramer to rescind his dismissal of the action filed in Jefferson County or an order directing Judge Carr to reinstate the action filed in Washington County.

In support of his petition, Relator claims that § 491.230.2 RSMo Cum.Supp.1993, as interpreted and applied by respondent Judge Kramer, has created a situation in which any inmate not incarcerated within the county in which he resided prior to his incarceration is effectively denied his constitutional right of access to the courts. Relator concedes that under *State ex rel. Henderson v. Blaeuer*, *supra*, the proper venue for his action seeking dissolution of marriage lies in his county of residence at the time of his incarceration, which in his case is Jefferson County. However, § 491.230 deprives him of the only possible means of appearing in person in Jefferson County and he has no funds with which to retain counsel to appear for him. Thus, Relator maintains that either Judge Kramer abused his discretion by refusing to enter judgment by default without requiring his personal appearance or § 491.230.2 is uncon-

stitutional as applied in this case.[2] Further, although the dismissal of the petition was without prejudice, Relator maintains that it is effectively with prejudice and operates to permanently deprive him of access to the court because there is no genuine prospect that his place of incarceration will be changed to a county of proper venue.

Alternatively, Relator maintains that Judge Carr abused his discretion by prematurely dismissing his petition for improper venue before any responsive pleading was due. Relator argues that parties to a dissolution proceeding may waive venue and that Judge Carr's action in examining venue *sua sponte* deprived him of the opportunity to determine if his wife would have waived improper venue by failing to raise it in her answer. Further, Relator claims that Judge Carr's actions deprived him of equal protection, alleging that the Circuit Court of Washington County had previously entertained a dissolution action for another prisoner who was similarly situated.

In his answer to our preliminary writ of mandamus, Judge Kramer admits all of Relator's factual allegations as to the course of proceedings in Jefferson County. Judge Kramer acknowledges Relator's dilemma and Relator's right to have his Petition for Dissolution of Marriage heard. However, Judge Kramer submits that "[i]t is long standing and well settled law that no divorce or dissolution of marriage can be granted, even in a default situation, without testimony to support the allegations of the petition." Further, in view of the 1990 amendments to § 491.230.2, the court cannot issue a writ of habeas corpus ad testificandum to permit Relator to testify because a dissolution action is purely a civil proceeding. Relator is a poor person and presumably has no means to obtain the services of counsel to take his deposition in lieu of live testimony. Accordingly, Judge Kramer submits the court has no alternative but to dismiss the petition for failure to prosecute. Judge Kramer candidly concedes that this is not a satisfactory outcome because it effectively denies Relator of his constitutional right of access to the courts.

Starting in the early 1800s and continuing until 1976, the civil rights of persons incarcerated in Missouri were deemed suspended by the operation of the so-called "civil death" statute, § 222.010 RSMo 1969. That statute was held unconstitutional in *Thompson v. Bond*, 421 F.Supp. 878 (W.D.Mo.1976). *Thompson* held, *inter alia*, that Missouri could not, consistent with due process, preclude inmates from instituting divorce proceedings. 421 F.Supp. at 882, n. 5. Further, in cases predating and following *Thompson*, it has been widely recognized that "absent a countervailing state interest of overriding significance, prisoners must be afforded *meaningful* access to the courts and an opportunity to be heard." *Strube v. Strube*, 158 Ariz. 602, 764 P.2d 731, 733 (1988) (citing *Bounds v. Smith*, 430 U.S. 817, 821–22, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977) and *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785–86, 28 L.Ed.2d 113 (1971)).

■ It is equally well established that a prisoner has no absolute right to appear personally in a dissolution proceeding in which he is the plaintiff. *See In re Marriage of Burnside*, 777 S.W.2d 660, 664 (Mo.App. 1989). Rather, at least prior to the enactment of § 491.230.2, whether an inmate should be allowed to appear personally was a matter addressed to the sound discretion of the trial court. *Id.* In exercising that discretion, trial courts were expected to require strict proof of the materiality of the testimony and the necessity of attendance of the prisoner as a witness. *Laws v. O'Brien*, 718 S.W.2d 615, 618 (Mo.App.1986). Such proof would then be balanced against the state's interest in economy, convenience and security. *See Callahan v. Marsh*, 717 S.W.2d 260, 261 (Mo.App.1986). Other states and the federal courts have taken a similar balancing approach, weighing the need for the prisoner's personal attendance to secure meaning-

---

2. Although Relator's constitutional claims are somewhat inartfully presented, we discern two separate constitutional claims: (1) violation of his due process right to meaningful access to the courts secured by the Fifth and Fourteenth Amendments, and (2) violation of his right to equal protection secured by the Fourteenth Amendment, whereby prisoners incarcerated in their county of residence enjoy access to the courts that he is denied.

ful access against the state's interests in economy, convenience and security. *See Strube*, 764 P.2d at 734; *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir.1976); *Little v. Little*, 616 So.2d 1179, 1180 (Fla.App.1993); *Nichols v. Martin*, 776 S.W.2d 621, 623 (Tex. App.1989).

■ Our reading of these cases and others indicates that the key factor in determining whether a prisoner has a constitutional right to appear personally in a civil matter is whether there are any reasonable alternative means by which the prisoner may be heard and thus obtain meaningful access to the court. Where there are no reasonable alternatives, personal attendance may be required as a matter of due process.

■ Judge Kramer's position is that there is no alternative available in this case due to the "long standing and well settled law" requiring testimony to support the allegations of the petition in a dissolution case. We disagree. Although a personal appearance and live witnesses may at one time have been a prerequisite to issuance of a dissolution decree,[3] we find no such absolute requirement in the dissolution statutes as they are presently constituted.

The statutory prerequisites for obtaining a decree of dissolution are set forth in § 452.-305.1 RSMo 1986:

> **452.305. Decree of dissolution, grounds for—legal separation, when.—1.** The circuit court shall enter a decree of dissolution of marriage if
>
> (1) The court finds that one of the parties has been a resident of this state, or is a member of the armed services who has been stationed in this state, for ninety days next preceding the commencement of the proceeding and that thirty days have elapsed since the filing of the petition;

> (2) The court finds that there remains no reasonable likelihood that the marriage can be preserved and therefore the marriage is irretrievably broken; and

> (3) To the extent it has jurisdiction to do so, the court has considered, approved, or made provision for child custody, the support of any child of the marriage who is entitled to support, the maintenance of either spouse, and the disposition of property.

■ The *procedures* by which a decree of dissolution of marriage may be obtained are as provided in the supreme court rules. § 452.300.1 RSMo 1986. Thus, Rules 74.04 (Summary Judgment)[4] and 74.05 (Entry of Default Judgment) are available for use in dissolution actions. From the pleadings before us, it appears that Relator could obtain the relief he is seeking under either rule without the necessity of a personal appearance before Judge Kramer.

■ By her default, wife has admitted all of the traversable allegations of fact set forth in Relator's petition. *See Maynard v. Maynard*, 601 S.W.2d 649 (Mo.App.1980). The petition alleges that: (1) Relator has been a resident of Missouri for more than 10 years prior to filing; (2) he is incarcerated at the Potosi Correctional Center; (3) prior to his incarceration, Relator had resided in Jefferson County; (4) Relator's wife is a resident of Madison County, Illinois; (5) the parties were married on May 23, 1986 in the City of St. Louis and the marriage was duly registered there; (6) the parties are separated and have not lived together since August 21, 1987; (7) no children were born of the marriage and wife is not now and never has been pregnant; (8) neither party is a member of the armed forces; (9) the parties have not accumulated any marital property and Relator waives any and all entitlement to any

---

**3.** *See e.g.,* § 452.090 RSMo 1969, repealed by L.1973, p. 470, § A, eff. Jan. 1, 1974:

> **452.090. Divorce affects guilty party, how.**—In all cases of divorce from the bonds of matrimony, the guilty party shall forfeit all rights and claims under and by virtue of the marriage. In all cases where the proceedings shall be *ex parte*, the court shall, before it grants the divorce, require proof of the good

conduct of the petitioner, and be satisfied that he or she is an innocent and injured party.

**4.** The rules also provide numerous mechanisms for submission of supporting evidence which could be utilized by an indigent prisoner proceeding *pro se*. *See, e.g.,* Rule 74.04(c) (authorizing use of affidavits); Rule 57.04 (depositions upon written questions); Rule 59.01 (request for admissions).

property that could be considered marital property; and (10) there is no likelihood the marriage could be preserved and, therefore, the marriage is irretrievably broken.

Although Rule 74.05 will not, standing alone, permit a default judgment in cases involving division of property due to the necessity of proving value, and would never be an appropriate vehicle for determinations of child custody or child support due to the necessity of determining the best interests of the child, neither of these concerns are implicated here. Relator has waived his right to marital property and there are no children involved. Under these circumstances, all of the prerequisites for entry of a decree stand admitted by default and there appears to be no impediment to the entry of a decree pursuant to Rule 74.05, without requiring Relator to appear personally, as Relator has previously moved.

We need not and expressly do not decide whether, in other circumstances, a trial court may properly exercise its discretion to require a party to appear personally as a prerequisite to obtaining a default judgment in a matter which does not involve unliquidated claims. Rather, we hold that, to the extent such discretion exists, it was abused in this case because, in combination with § 491.-230.2, such a requirement necessarily deprives Relator of his right of access to the courts.

Further, in view of our determination that Rule 74.05 offers a means by which Relator can obtain complete relief on the facts set forth in the record before us, we deem it unnecessary to address whether § 491.230.2 may, under other circumstances, operate to deprive Missouri inmates of their constitutional rights of access to the courts. To the extent such rights are at issue in this case, they are abridged solely by reason of the court's unauthorized and unwarranted insistence upon Relator's personal appearance as prerequisite to issuance of the decree and not by § 491.230.2.

We readily acknowledge that the procedures we find suitable for protection of Relator's rights in this case may not be adequate to avoid the constitutional concerns raised by Relator in all cases. We observe, however, that we are obliged to uphold the enactments of the legislature if possible. *Penner v. King,* 695 S.W.2d 887, 889 (Mo. banc 1985). By its enactment of § 491.230.2, the legislature has indicated in the strongest possible terms that prisoners should not be permitted to leave the prison to appear in civil cases. To that end, wholly aside from the procedures available in the supreme court rules, the legislature has provided a variety of other alternatives for securing prisoners' rights to access to the courts. *See, e.g.,* §§ 544.275, 561.031 Cum.Supp.1993 (authorizing conduct of non-jury proceedings within correctional facilities or by closed circuit T.V.). Only when such procedures and alternatives are shown to be clearly inadequate to secure prisoners meaningful access to the courts will the constitutional issues raised by Relator be ripe for review. *See State ex rel. Union Electric Co. v. Pub. Serv. Com'n,* 687 S.W.2d 162, 165 (Mo. banc 1985) (court will avoid deciding constitutional question if the case can be fully determined without reaching it).

We hold that Judge Kramer exceeded his lawful authority in requiring Relator to personally appear and offer testimony as a prerequisite to obtaining a decree of dissolution. Accordingly, we order our preliminary writ of mandamus heretofore issued to Judge Kramer be made absolute and direct that the petition be reinstated for further proceedings consistent with this opinion. Our writ of mandamus directed to Judge Carr is quashed as moot.

CARL R. GAERTNER, P.J., and SMITH, J., concur.