STATE of Missouri, Respondent,

v.

Michael W. SCOTT, Appellant.

No. WD 51932.

Missouri Court of Appeals,
Western District.

Oct. 15, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 1996.

Michael Scott, Moberly, for appellant.

Randall D. Eggert, Asst. Pros. Atty.,
Platte County, Platte City, for respondent.

SPINDEN, Judge.

On February 7, 1992, Platte County Sheriff's deputies searched the residence of Michael Scott and his girlfriend after obtaining a search warrant. They seized marijuana, numerous ziplock bags, several firearms, and cash. The state charged Scott with possession and sale of marijuana on February 9, 1992. Four days later, the prosecutor filed a civil forfeiture action under §§ 513.600–513.645, RSMo 1994, seeking to confiscate Scott's property allegedly used, realized or derived through the commission of a drug-related crime. In October 1992, Scott pleaded guilty to the drug charges and was sentenced to two consecutive 10-year prison terms.

In June 1995, Scott received notice of the prosecutor's forfeiture action while he was in prison. Scott filed an answer and a motion to dismiss. In October 1995, the circuit court convened a hearing. Scott did not appear, and the court rescheduled the hearing for November 1, 1995. Scott did not appear at that hearing, either. The circuit court heard the prosecutor's evidence and ordered that Scott's property be forfeited. Scott appeals.

We first consider Scott's motion to strike certain documents filed by the state. After receiving this court's permission for an extension of time to file a transcript of the 1995 civil forfeiture hearing, the state instead submitted Scott's 1992 criminal guilty plea hearing and sentencing transcripts. Scott has filed a motion to strike these documents because the state submitted transcripts different from those which it had asked to file with this court. Alternatively, Scott asks that we strike the submitted transcripts because they represent evidence outside the record. We agree with Scott on both grounds. The state did not have permission to file the 1992 guilty plea and sentencing transcripts. Rather, it requested and received permission to file only the 1995 forfeiture hearing transcript. Moreover, nothing in the record indicates that the 1992 guilty plea transcript was received into evidence at the forfeiture hearing. Without the forfeiture hearing transcript, we are unable to determine whether the guilty plea transcript was before the court at the 1995 hearing. We, therefore, order that the guilty plea and sentencing transcripts be stricken from the record on appeal.

■ In his first point, Scott claims that the trial court lacked jurisdiction to adjudicate the state's forfeiture action because it failed to convene a hearing on his motion to dismiss within the 10-day time limit set forth in § 513.612. That statute says, "A party may bring one motion to dismiss at any time and such motion shall be heard and ruled on within ten days[.]" In this case, Scott filed an answer and motion to dismiss on July 17, 1995. The trial court did not hear or rule on the motion until November 1, 1995, when it ordered Scott's property to be forfeited.

Scott argues that the trial court lost jurisdiction over the forfeiture action because the court did not rule on the motion within 10 days as mandated by § 513.612. In support, he cites State v. Eberenz, 805 S.W.2d 359 (Mo.App.1991), and State v. Hampton, 817 S.W.2d 470 (Mo.App.1991), both of which are distinguishable. Neither case addressed whether the statutory provision at issue here is mandatory.

We find no indication that Scott requested a hearing date for his motion or gave notice of it as required by Rule 44.01(d). We will not convict the circuit court of error for not ruling on a motion of which it was not notified.

In his second point, Scott claims that the doctrines of laches and estoppel barred the state's forfeiture action. He asserts that the state unreasonably delayed the hearing to his detriment.

■ The appellant bears the burden of proving laches. Estate of Remmele, 853 S.W.2d 476, 480 (Mo.App.1993). Generally, "the question of laches is a question of fact to be determined from all the evidence and circumstances adduced at trial." Lyman v. Walls, 660 S.W.2d 759, 761 (Mo.App.1983). The complaining party must show that the party possessing knowledge of the facts excessively delayed asserting his rights and that the other party suffered legal detriment as a result. Id. Mere delay in asserting a right does not, without more, constitute laches. The defendant must also show that he was prejudiced by the delay. In Re Mar-

*riage of Brown,* 878 S.W.2d 94, 96 (Mo.App. 1994).

■ Scott offered no evidence to establish either laches or estoppel. A three-year lapse between the state's filing of the forfeiture petition and the hearing does not establish laches. We find no evidence that Scott suffered any legal detriment or prejudice.

Alternatively, Scott claims that the state delayed prosecution of the action in retaliation for his filing a civil rights complaint. We find nothing in the record to support this claim, so we deny this point.

In his third point, Scott claims that the evidence established that the property seized by authorities was not subject to forfeiture because it was not used, derived or realized through criminal activity. We do not have a sufficient record to rule on the point.

■ Scott had the duty as appellant to file the transcript and to prepare a legal file so that the record contained all the evidence necessary for our making determinations on the issues raised. *Sydnor v. Director of Revenue,* 876 S.W.2d 627, 628 (Mo.App.1994). "If a matter complained of is not present in the record, there is nothing for this court to review." *Matter of Estate of Voegele,* 838 S.W.2d 444, 446 (Mo.App.1992).

Scott did not furnish this court with a copy of the forfeiture hearing transcript. We, therefore, do not have a record of what occurred during that hearing other than references made in the circuit court's findings. Although Scott referred to the guilty plea hearing in his brief on appeal, he did not include the plea hearing transcript in his legal file for appellate review. When the state attempted to submit the plea hearing transcript for appellate consideration, Scott filed a motion asking this court to strike it. We sustained that motion; therefore, we will not consider the plea hearing transcript on this appeal. Because Scott has failed to pro-vide us with an adequate record to make a determination of the issue presented, we have nothing to review.

■ Alternatively, Scott argues that the forfeiture represented an excessive fine in violation of the Eighth Amendment to the United States Constitution. As the state correctly points out, Scott's attempt to "shotgun" this separate issue under Point III is inappropriate and constitutes a violation under *Thummel v. King,* 570 S.W.2d 679, 688 (Mo. banc 1978). In any event, we find no evidence establishing the amount of profits which were derived from the criminal activity, and none substantiating Scott's claim as to the seized property's purported value. We, therefore, cannot conclude that the forfeiture constituted an excessive fine.

■ Scott also argues that his due process rights were violated because the trial court did not order his appearance at the forfeiture hearing. Before the enactment of § 491.230.2 in 1990, the decision whether to permit an inmate to appear at trial was a matter within the trial court's discretion. *State ex rel. Kittrell v. Carr,* 878 S.W.2d 859, 862 (Mo.App.1994). The 1990 version of § 491.230.2 prohibited correctional facility inmates from appearing at civil proceedings except when the inmate was a respondent in a Chapter 211 parental rights termination case. In 1995, the General Assembly amended the statute to permit an inmate who is a party to a civil proceeding to attend a trial when the trial court determined that the inmate would be "substantially and irreparably prejudiced by his failure to attend a trial on the merits in the civil proceeding." [1] "By its enactment of § 491.230.2, the legislature has indicated in the strongest possible terms that prisoners should not be permitted to leave the prison to appear in civil cases." *Kittrell,* 878 S.W.2d at 863. Moreover, due process is not implicated in the absence of a showing that alternative means [2] are inade-

---

1. The amended statute says, "No person detained in a correctional facility of the department of corrections shall appear and attend or be caused to appear and attend any civil proceeding, regardless of whether he is a party, except when.... (2) The offender is a party to the civil proceeding and the court finds that the offender will be substantially and irreparably prejudiced by his failure to attend a trial on the merits in the civil proceeding[.]"

2. These might include video depositions and closed-circuit television. See, e.g., *Lockhart v. Middleton,* 863 S.W.2d 367, 369 (Mo.App.1993);

quate to secure meaningful access to the courts. *Id.*

 Although Scott now complains that the trial court abused its discretion by failing to compel his attendance at the forfeiture hearing, we find no indication that he asked the court to exercise its discretion to order his attendance at the hearing. That the court had previously issued a writ at the prosecutor's request for him to attend the first hearing makes no difference. Scott received notice that the hearing had been rescheduled for November. If he had desired to attend the hearing, he could have asked the court to compel his attendance under § 491.230. The circuit court was not obligated to order, *sua sponte,* Scott's appearance. Although Scott complains that he was not timely notified of the rescheduled hearing, he admits in his reply brief that he was informed on October 25, 1995, that the original hearing had been cancelled. Scott also failed to demonstrate that he did not have access to adequate alternatives. We also note that there is no indication in the record that Scott ever attempted to present this issue to the trial court in a post-trial motion. This point is denied.

Scott also claims that the forfeiture constituted a violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Scott asserts that the forfeiture constituted additional punishment for the same offense.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence [sic] to be twice put in jeopardy of life or limb[.]" This provision protects Scott from subsequent prosecutions and multiple punishments for the same offense after an acquittal or conviction. *State v. Mayo,* 915 S.W.2d 758, 759 (Mo. banc 1996).

At issue in this case is whether an *in rem* civil forfeiture constitutes "punishment" for double jeopardy purposes. Neither party cites any Missouri cases which have ad-

dressed this issue; nor have we located any. We, therefore, turn to federal cases which have addressed the issue.

The United States Supreme Court recently addressed this issue in *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), and *United States v. $405,089.23 in United States Currency,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). As Scott points out, the facts in *Ursery* are similar to those in the present case. The United States Court of Appeals in both cases ruled that forfeitures violated the Double Jeopardy Clause.

In *Ursery,* the police found marijuana at the defendant's residence, and authorities charged him with manufacturing marijuana. The government instituted forfeiture proceedings pursuant to 21 U.S.C. § 881(a)(7), seeking forfeiture of the defendant's residence. The defendant was later found guilty of manufacturing marijuana and sentenced to prison. On appeal, the United States Court of Appeals for the Sixth Circuit reversed the conviction, holding that it violated the Double Jeopardy Clause. The Sixth Circuit concluded, based on its reading of *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), that "any civil forfeiture under 21 U.S.C. § 881(a)(7) constitutes punishment for double jeopardy purposes." The United States Court of Appeals for the Ninth Circuit reached the same conclusion in *$405,089.23 in United States Currency.*

The United States Supreme Court reversed both rulings, pointing out that the appellate courts had misread *Halper* and *Austin.* Reaffirming its earlier decisions,[3] the Supreme Court concluded that *in rem* civil forfeitures are remedial actions, distinct from potentially punitive *in personam* civil penalties such as fines, and do not constitute "punishment" for purposes of double jeopardy. The court also pointed out that neither *Austin* nor *Halper* involved *in rem* civil for-

*Kittrell,* 878 S.W.2d at 864 (citing §§ 544.275 and 561.031).

**3.** *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361

(1984); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); and *Various Items of Personal Property v. United States,* 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931).

feitures for double jeopardy purposes. *Austin* involved a challenge of a civil forfeiture under the Eighth Amendment. *Halper* involved an *in personam* civil penalty.

 We, therefore, conclude that Scott's reliance on those cases is misplaced. We conclude that the forfeiture in this case did not violate the Double Jeopardy Clause.

Finally, Scott claims that the circuit court erred in not ordering the state to return $28,000 in cash he says that police seized from his residence. The state made no mention of the $28,000 in its forfeiture petition. Although the circuit court referred to the money in its findings, it did not order forfeiture of the money. Without a transcript of the forfeiture proceeding, we have no way of knowing what evidence was presented, if any, concerning the alleged seizure of this money. Even if we assume that $28,000 was seized by authorities, we find no evidence establishing who has possession of the money or who has a legal right to retain it.

We affirm the order of forfeiture.